[No. 18850.   *En Banc.*   July 15, 1925.]

ALFRED ALTO, *Respondent*, v. HARTWOOD LUMBER COMPANY, *Appellant*.[1]

APPEAL (371)—REVIEW—SCOPE—CORRECT DECISION BASED ON ERRONEOUS GROUNDS. Upon appeal from an order granting a new trial for error in the instructions, after a verdict for the defendant, which error is confessed, the judgment will nevertheless be affirmed, where it appears that the court was without jurisdiction and that, on a new trial, the action must be dismissed.

APPEARANCE (8)—EFFECT OF GENERAL APPEARANCE AFTER SPECIAL APPEARANCE. After appearing specially to move to quash the service of summons for want of jurisdiction, which motion was denied, the defendant may demur and answer, preserving its special appearance, without waiving the matter of want of jurisdiction.

CORPORATIONS (261)—FOREIGN CORPORATIONS—ACTIONS—JURISDICTION—DOING BUSINESS IN STATE—SERVICE OF PROCESS—MASTER OF VESSEL AS AGENT. A foreign corporation owning a vessel engaged in carrying lumber for export from ports in this state is not engaged in doing business within this state, and the master of the vessel is not the agent of the owner within the meaning of Rem. Comp. Stat., § 226, authorizing service of summons upon such corporations by delivering a copy to any agent thereof, where there was no regular boat service, no regular port of landing, no maintenance of a local agent and no business continuously transacted, and jurisdiction *in personam* was sought as to a transaction not pertaining to the business of the master.

HOLCOMB, J., dissents.

Appeal from an order of the superior court for Pacific county, Hewen, J., entered May 17, 1924, granting a new trial, after the verdict of a jury rendered in favor of the defendant, in an action in tort. Reversed.

*Welsh & Welsh* and *A. D. Gillies*, for appellant.

*G. F. Vanderveer, Everett C. Ellis* and *Fred M. Bond*, for respondent.

*Stephen V. Carey* and *Mark M. Litchman*, amici curiae.

[1] Reported in 237 Pac. 987.

FULLERTON, J.—The respondent, Alto, as plaintiff, brought this action in the superior court of Pacific county against the appellant, Hartwood Lumber Company, to recover in damages for personal injuries. There was a trial in that court before a jury, resulting in a verdict for the appellant. On motion of the respondent, the verdict was set aside and a new trial granted. The appeal is from the order granting a new trial.

The new trial was granted because of erroneous instructions given the jury. As the appellant confesses error in the instructions, and, as we ourselves think them plainly erroneous, seemingly our inquiry might end here. But the appellant contends that there were errors in the record, fatal to any right of recovery, occurring prior to the order from which the appeal is taken, and that these are before us for review. The statute regulating appeals (Rem. Comp. Stat., § 1716, subd. 7) [P. C. § 7290], does indeed provide that "an appeal from any such order [that is, any appealable order previously defined in the cited section, of which an order granting a new trial is one] shall also bring up for review any previous order in the same action or proceeding which involves the merits and necessarily affects the order appealed from, . . ." The statute may not be strictly applicable to the case in hand, but whether it is so or not, seemingly the rule contended for should obtain from the principle of the thing. If the record discloses a matter which must necessarily prove fatal to a recovery as a final result, the court should recognize and enforce it at the time it first appears. It would be a needless waste of the time and the energy of both the court and the litigants to continue an action or proceeding where it is made to appear that there can be in the end but a single con-

clusion. We think such a matter appears in the present record; the trial court, we are constrained to conclude, was without jurisdiction of the person of the appellant.

To an understanding of the question, some further statement of the facts is necessary. The injury, for which the action is brought to recover, occurred on board the steam schooner Claremont. The schooner is a sea-going vessel, and was employed by its owners in the business of carrying lumber for hire from ports in the state of Washington to ports elsewhere on the Pacific coast without the state. On August 19, 1920, it was moored alongside the the dock of the Hartwood Mill Company in the navigable waters of Willapa Harbor, in Pacific county, and was being loaded with lumber. The respondent is a longshoreman and was employed to assist in the loading; his duties being to aid in storing lumber brought on board the vessel by others. He was injured while so working, because of the carelessness and negligence of the second mate, under whose direct and immediate supervision he was required to work.

The appellant is a corporation organized under the laws of the state of California. It is a part owner only of the vessel, and is not the managing owner; its connection with the managing owner being, as we understand the record, that it joined with its co-owners in the selection of a manager to whom was intrusted the management and operation of the vessel. It has no fixed place of business within the state of Washington; has no resident agent therein, and does no business therein other than such as may be deduced from the fact that the vessel of which it is a part owner is sent by the manager into the state from time to time for the purpose of taking on a cargo of lumber. The vessel

does not carry passengers; it has no regular schedule; and the record does not disclose that it ever carries freight from outside ports into the state.

The present action was begun in March, 1923. The service relied upon to confer jurisdiction was had upon the master of the vessel on a return trip of the vessel into Willapa Harbor for a cargo of lumber. The master served was not the same person who was in command of the vessel as master at the time the injury occurred, although perhaps this is not a material circumstance in so far as it pertains to the validity of the service. The appellant, in response to the summons, appeared specially and moved to quash the service. Its motion being overruled, it first demurred to the complaint and subsequently answered to the merits, at all times preserving its special appearance, as it may do under the practice in this state. *Matson v. Kennecott Mines Co.*, 103 Wash. 499, 175 Pac. 181.

By § 3852 of the code (Rem. Comp. Stat.) [P. C. § 4657], foreign corporations, incorporated for any of the purposes for which domestic corporations may be organized under the laws of the state, are permitted to do business in the state on the same terms and conditions that a domestic corporation is permitted to do business. It must, however, as a condition precedent thereto, comply with certain prerequisites the statute provides. It must, among other things, cause to be filed and recorded in the office of the secretary of state a certified copy of its charter, or articles of incorporation, and it must designate a principal place of business within the state and appoint a resident agent on whom process against it may be served. It is subject to certain fixed penalties, and is also subject to ouster at the suit of the state if it fails to comply with these prerequisites. It is true that the statute relating to the

service of a summons on such corporation (Ib., § 226, subd. 9) [P. C. § 8438], is broader than these sections would seem to contemplate. It provides that a summons may be served upon a foreign corporation "doing business within the state" by delivering a copy thereof "to any agent, cashier or secretary thereof." It is true, also, that the statute is not applicable to the appellant's situation; a state cannot require a foreign corporation engaged wholly in interstate commerce to designate an agent or have a place of business within the state. *Smith & Co. v. Dickinson,* 81 Wash. 465, 142 Pac. 1133.

But we think the statute illustrative, nevertheless, of what the legislature meant by the phrase "doing business within the state." It means, we think, that a foreign corporation, to do business within the state, must, as we said in *Rich° v. Chicago, Burlington & Quincy R. Co.,* 34 Wash. 14, 74 Pac. 1008, transact, within the state, some substantial part of its ordinary business, continuous in the sense that it is distinguished from merely casual or occasional transactions. This does not mean, of course, that a foreign corporation not complying with the statute is altogether immune from the processes of the courts of the state. Its property within the state, whether brought therein casually or kept therein permanently, like the property of a non-resident individual, is subject to sequestration at the suit of a citizen of the state in satisfaction of an obligation due the citizen. Nor does it mean that an action *in personam* cannot be maintained against such a corporation. Where a corporation comes within the state for the transaction of a particular business and incurs an obligation to a citizen in the transaction of the business, it is amenable to a judgment *in personam,* and such a judgment may be obtained by a service upon

an agent having in charge the business. But it does mean that the transaction of a casual or intermittent business within the state does not subject the corporation to a judgment *in personam* for other obligations in no way connected with the particular business, by a service upon its agent having in charge the particular business.

It must be remembered, furthermore, that the agency powers of the master of a vessel engaged in interstate commerce differ widely from the powers of the ordinary agent. Owing to the peculiar doctrines of the law maritime, he has powers with reference to the property under his charge and the business upon which he is employed not accorded to agents in other lines of business. For illustration, he may, under stated conditions, contract for supplies for his vessel, contract for repairs and equipment, he may hire the crew, and do all acts necessary and proper for conducting the vessel's affairs in the usual way; and bind his principals by his contracts. He may even, when the vessel's safety demands it, jettison the cargo without creating liability on his principals for its loss. On the other hand, his powers as the agent of his principals are marked with well defined limitations. He is not a general agent or an agent for all purposes.

"In his appropriate character of master the law considers him an agent only for the navigation of the vessel and in such matters as are connected with, and incident to, such employment. And when the books speak of the master's being agent of the owner, they are to be understood in this sense." *General Insurance Co. v. Ruggles,* 12 Wheat. (U. S.) 408, 412.

No principle of the law maritime, therefore, would permit a personal judgment against an owner in a jurisdiction foreign to the residence of the owner by a service upon the master in a controversy not pertaining to

the business which the master has in charge. It is not
our opinion that the statute meant to provide a different
rule; and, we may add, if it does so provide, it is open to
the grave objection that it is an undue burden upon in-
terstate commerce. It must follow, we think, that the
master in charge of the vessel was the agent of the
owner only for the particular transaction in which he
was engaged at the time of the service of the summons
upon him, and since the business he was engaged in at
that time was casual and was in no way connected with
the business out of which the cause of action arose, the
service of the summons on him was not sufficient to
require the corporation to answer *in personam.*

In so far as we are advised, our cases present no in-
stance where the precise question was directly involved.
The case more nearly approaching it is, perhaps, the
case, of *Macario v. Alaska Gastineau Mining Co.*, 96
Wash. 458, 165 Pac. 73, L. R. A. 1917E 1152. In that
case the defendant was a corporation organized under
the laws of New York, engaged in the business of
mining in the territory of Alaska. The plaintiff was
at one time an employee of the defendant at the Alaska
mine and received personal injuries while so employed.
The defendant maintained an office in King county, in
this state, in which it employed one Munro on a regular
salary, his duties being to purchase and forward sup-
plies for use at the Alaska mine. The plaintiff brought
an action in King county to recover for his injuries
and made service upon Munro as the agent of the de-
fendant. The trial court quashed the service on the
ground that the defendant was not doing business in
this state within the meaning of that term as it is used
in the statute, and on appeal this court in the cited
case affirmed its holding. It is true that in the opinion
we emphasized the fact that the transaction which gave
rise to the cause of action did not occur in this state,

but it would seem that the result must have been the same had the fact been otherwise. See, also: *Carstens & Earles v. Leidigh & H. Lumber Co.,* 18 Wash. 450, 51 Pac. 1051, 63 Am. St. 906, 39 L. R. A. 548; *Rich v. Chicago, Burlington & Quincy R. Co.,* 34 Wash. 14, 74 Pac. 1008; *Arrow Lumber & Shingle Co. v. Union Pac. R. Co.,* 53 Wash. 629, 102 Pac. 650; *Smith & Co. v. Dickinson, supra.*

The case upon which the respondent principally relies to maintain the sufficiency of the service is our own case of *Sievers v. Dalles, Portland & Astoria Navigation Co.,* 24 Wash. 302, 64 Pac. 539. There the corporation, while a foreign steamship company, was engaged regularly in carrying passengers and freight from ports without to ports within the state, and landed regularly at a wharf within the state where it received and discharged passengers and freight, and where it employed and maintained a wharfinger. The summons was served on the wharfinger, as well as the purser of the vessel. The service was held sufficient, and, indeed, it would hardly seem that there was room to argue that the service was not within both the letter and spirit of the statute. But the conditions there prevailing do not obtain in the present case. Here there was no regular boat service, no regular port of landing, no maintenance of a local agent, and no business continuously transacted. This distinction, we think, so far differentiates the case as to render the rule of the cited case without authority for the rule of the present case.

Another case cited and relied upon is *Pacific Typesetting Co. v. International Typographical Union,* 125 Wash. 273, 216 Pac. 358, 32 A. L. R. 767. But the case does not present the question here involved. It falls within the exception to the general rule before noted,

as the controversy arose over the very business the agent was sent into the state to transact, and the service was had while the agent was in the conduct of the business. We do not here dispute the general principle the case announces, namely, that the tendency of modern legislation has been to make it easy to obtain jurisdiction over foreign corporations. But the statute must be regarded nevertheless—it must clearly appear that the corporation is personally present in the state in the person of the agent, else any judgment against it obtained by service on the agent will be obnoxious to the rule of due process of law.

The other cases cited require no special mention. The facts in none of them even approximate the facts of the instant case, and the rules they announce throw no light upon the question of the proper rule for the instant case.

It is our conclusion that the motion to quash the service should have been granted. The order granting a new trial is therefore reversed, and the cause is remanded with instructions to quash the service and permit the defendant in the action to go hence without delay.

TOLMAN, C. J., PARKER, ASKREN, MACKINTOSH, MITCHELL, BRIDGES, and MAIN, JJ., concur.

HOLCOMB, J., dissents.