[No. 19946. *En Banc*. January 5, 1927.]

ROBERT M. LUCAS, *Respondent*, v. LUCKENBACH STEAMSHIP COMPANY, INCORPORATED, *Appellant*.[1]

[1] CORPORATIONS (195)—ACTIONS AGAINST—VENUE—TRANSACTING BUSINESS. A steamship company transacted business, within the meaning of Rem. Comp. Stat., § 206, authorizing a suit in any county where it transacted business at the time the cause of action arose, where plaintiff was injured in loading its vessel at a port in S. county and the company made twenty business calls for five months immediately following the plaintiff's injury, although its vessels did not call at such port regularly.

[2] MASTER AND SERVANT (101)—ASSUMPTION OF RISKS—ABSENCE OF LIGHTS—PROMISE TO REMEDY DEFECT. There was a demand for lights and an implied promise to furnish them, relieving stevedores from the assumption of risk in working without lights, where it appears that they called for lights when the lights went out, whereupon men appeared and worked on the lights for a short time and disappeared without bringing on the lights, leaving the impression that they would return to finish the work in a short time.

[3] APPEAL (464)—REVIEW—HARMLESS ERROR—INSTRUCTION—REFUSAL OF REQUEST. It is not error to refuse requested instructions that are sufficiently covered in the general charge.

[1]Reported in 252 Pac. 526.

[4] DAMAGES (47)—PERSONAL INJURIES—FUTURE PAIN AND SUF-
FERING. An instruction upon the subject of future pain and
suffering and reduced ability to earn money is warranted
where it appears that the plaintiff, a stevedore, was in a crip-
pled condition at the time of the trial and still suffers more or
less pain and would continue to do so for some time.

[5] SAME (88)—EXCESSIVENESS—IMPAIRMENT OF EARNING CAPACITY
—INJURY TO LEG. A verdict for $1,325 is not excessive where
the plaintiff, a stevedore, suffered a Pott's fracture of the leg
and was unable to work for three months, and after that time
his earning capacity was somewhat decreased.

Appeal from a judgment of the superior court for
Snohomish county, Alston, J., entered December 17,
1925, upon the verdict of a jury in favor of the plain-
tiff, in an action for personal injuries sustained by a
stevedore in loading a vessel. Affirmed.

*Huffer, Hayden, Merritt, Summers & Bucey,* for ap-
pellant.

*Douglas T. Ballinger,* for respondent.

BRIDGES, J.—The respondent, Lucas, was injured
while working as a stevedore in the hold of a steamship
owned and operated by the appellant, Luckenbach
Steamship Company, Inc. The injury occurred at the
port of Everett, in the county of Snohomish, and re-
spondent brought an action in the superior court of
that county to recover for his injuries. Judgment went
in his favor, it being based upon the verdict of the jury,
and the steamship company has appealed.

The appellant, on its first appearance in the action,
questioned the jurisdiction of the court, contending
that it was not suable in the county of Snohomish. The
record on this branch of the case discloses that the ap-
pellant is a corporation organized under the laws of the
state of Delaware; that it has complied with the laws of
the state of Washington relative to the doing of busi-
ness therein by a foreign corporation, its statutory

agent for the state of Washington residing at Seattle, in King county, at which place it maintains an office for the transaction of business, and that it does not maintain an office for the transaction of business in Snohomish county, nor does any person reside therein upon whom service of process may be had.

The record further discloses that the appellant is engaged in the business of carrying freight for hire by means of several steamships owned or controlled by it, and, as a regular part of its business, carries freight to and from ports in the state of Washington and foreign ports; that its vessels regularly call at the ports of Seattle and Tacoma, and also call at other ports in the state, including that of Everett, when directed so to do by the Seattle office, and at such times only as cargo is to be discharged or received at that port. It is also disclosed that the vessel upon which respondent was working at the time of his injury had been sent to the port of Everett to take on a cargo of lumber, and that the stevedores employed to load the lumber, among whom was the respondent, who lived at Everett, were employed by the Seattle office. It appears that in May, 1925, four, in June four, in July four, in August five, and in September five, of appellant's vessels visited the Everett harbor and there discharged or loaded freight. This period covers the time respondent was injured and two or three months after his suit was brought. While the suit was commenced in Snohomish county, of which Everett is the county seat, the service of summons was made on an agent of appellant at its Seattle office.

Further facts on the merits of the case are these: The respondent was working in what is known as the lower 'tweendecks and in the inshore wing. The lumber was stored in layers, each layer being about a foot high

and extending horizontally from the side of the ship across to the hatchway in the form of a floor. Respondent was obliged to walk over this floor of cargo in storing other lumber. On account of the varying lengths of the pieces of lumber and the shape and size of the place where they were stored, there were naturally and unavoidably holes in such cargo floor between pieces of lumber which could not be placed more closely together. It was into one of these holes that the respondent stepped and injured himself.

It seems to be conceded that there were two clusters of lights in this portion of the vessel, one being on the offshore side and the other on the wharf side, where the respondent was working when injured. The testimony of the respondent was to the effect that, when it got dark, he and his associates working with him called for lights, and that these two clusters of lights were turned on; that the one on the offshore side continued to burn, but the one on the shore side burned for a brief time and then went out; that thereupon he and his associates again called for lights, and that very shortly afterward two men came into the hold of the vessel and began to work with the lights which had gone out, and after so working for a brief time, without bringing the lights on, they went away, and that he, believing that they intended to return at once with appliances necessary to make the lights burn, continued to work, and that it was during this time that he stepped into the hole and was injured.

The complaint charges defendant with negligently failing to furnish sufficient light.

[1] We shall first discuss the question whether the action was properly brought in Snohomish county. The controlling provision of the statutes is Rem. Comp. Stat., §206, [P. C. §8543], which reads as follows:

"An action against a corporation may be brought in any county where the corporation transacts business or transacted business. at the time the cause of action arose; or in any county where the corporation has an office for the transaction of business or any person resides upon whom process may be served against such corporation, unless otherwise provided in this code."

This statute we have uniformly held is more than a mere statute relating to the venue of actions; that it is, in its effect, a statute relating to the jurisdiction of the court; and that a superior court is without power to enter a valid judgment against a corporation unless it is shown that it was sued in a county in which some one or more of the statutory requisites appeared. *McMaster v. Advance Thresher Co.*, 10 Wash. 147, 38 Pac. 670; *Hammel v. Fidelity Mutual Aid Ass'n*, 42 Wash. 448, 85 Pac. 35; *Whitman County v. United States Fidelity & Guaranty Co.*, 49 Wash. 150, 94 Pac. 906; *Richman v. Wenaha Co.*, 74 Wash. 370, 133 Pac. 467; *Davis-Kaser Co. v. Colonial Fire U. Ins. Co.*, 91 Wash. 383, 157 Pac. 870; *State ex rel. Grays Harbor Comm. Co. v. Superior Court*, 118 Wash. 674, 204 Pac. 783; *State ex rel. Seattle National Bank v. Joiner*, 138 Wash. 212, 244 Pac. 551.

It is conceded that at no time has the appellant had in Snohomish county an office for the transaction of business, nor has any person resided there upon whom process might be served. If, therefore, the appellant was suable in Snohomish county, it was because it transacts business therein or transacted business there at the time the cause of action arose within the meaning of the quoted statute. We have adopted the rule that for a corporation to come within this statute the business transacted by it must be a part of its usual or ordinary business and must be continuous in the sense that it is distinguished from merely casual or occa-

sional transactions. *Rich v. Chicago, B. & Q. R. Co.,* 34 Wash. 14, 74 Pac. 1008; *State ex rel. Wells Lumber Co. v. Superior Court,* 113 Wash. 77, 193 Pac. 229; *State ex rel. Yakima Trust Co. v. Mills,* 140 Wash. 357, 249 Pac. 8.

That the appellant, in the visits of its steamships to Everett, was transacting its ordinary and usual business is beyond question. This question need not be further argued. No hard and fast rules can be laid down as to when a corporation transacts sufficient of its business to bring it within the statute. Manifestly, if a ship calls at a port but once a year, it is transacting business there only casually or occasionally. But as its calls become more frequent, there must come a time when the court can say that it is doing business at that port within the contemplation of the statute. In this instance, the appellant's various vessels made business calls at the port of Everett more than twenty times during a period of five months immediately following the respondent's injury. Indeed, the record shows that these vessels called at the Everett port almost as frequently as they called at the port of Seattle or Tacoma. The only real difference, is that at the two last named ports, the vessels called regularly, while they called at the Everett port only when there was business there to be transacted. It is upon this ground that the appellant undertakes to draw a distinction. Its idea, we take it, is that under the statute it is doing business at any port where it calls regularly, without reference to the business to be transacted and without reference to the frequency of the visits; but that it is not doing business at a port where its vessels do not regularly stop, regardless of the frequency of the calls. The statute does not make this distinction, nor have our previous decisions made it. Our general

idea has been that, if a vessel frequently calls or makes a habit of calling at a port for the transaction of business, it will be doing business at that port within the terms of the statute. We are, therefore, of the opinion that the appellant was transacting a substantial portion of its usual business at the port of Everett, that the calls of its vessels there were not casual nor occasional, and for those reasons comes within the terms of the statute, and that the trial court was right in proceeding with the trial in Snohomish county.

We are aware of the apparent contrary holding by this court in the case of *State ex rel. Luckenbach Steamship Co. v. Superior Court,* No. 19812, decided February 26, 1926. That was a case in which August Pugul brought suit in Snohomish county against this appellant to recover damages on account of personal injury. The defendant in that case, the appellant here, moved the court to dismiss the action because of want of jurisdiction, and the affidavits in support of and opposition to that motion were almost identical in their facts with the affidavits in this case. In that case the trial court held that he had jurisdiction, and the defendant brought the matter to this court by means of a writ of prohibition, and without a written opinion, but on the authority of the case of *Alto v. Hartwood Lumber Co.,* 135 Wash. 368, 237 Pac. 987, we issued the writ prohibiting the lower court from proceeding with the trial of the case. We are now convinced that the decision in that case was wrong. The court was led into its error by the mistaken idea that that case was controlled by the doctrine in *Alto v. Hartwood Lumber Co., supra.* When the opinion in the last named case is critically read, it is apparent that the facts of the two cases are very dissimilar. It there appeared that a steamship of the Hartwood Lum-

ber Company called at the port of Raymond, in Pacific county in this state, for lumber, and while it was being loaded Alto was injured. Some time later, the ship again called at the same port, having a different master from the one it had on the previous call, and it was at this time that the suit was brought and service made on the then master of the ship. Apparently there was little or nothing in the record to show how frequently the vessel visited the port of Raymond or the amount of business done there. We held that the service on the defendant was bad, saying:

"It must follow, we think, that the master in charge of the vessel was the agent of the owner only for the particular transaction in which he was engaged at the time of the service of the summons upon him, and since the business he was engaged in at the time was casual and was in no way connected with the business out of which the cause of action arose, the service of the summons on him was not sufficient to require the corporation to answer *in personam.*"

[2] It is next claimed by appellant that its motions for nonsuit, for directed verdict, and for judgment notwithstanding the verdict should have been granted because the testimony shows that the respondent was not entitled to recover because of the doctrine of assumption of risk. It is argued that, if the light was insufficient, the respondent knew that fact as well or better than anyone else; that while he asked for lights, no promise thereof was given to him by any person in authority, and that he did not rely upon any promise. We think the position is not well taken. The respondent was at work in the hold of the vessel when darkness began to fall. He and his associates called for lights. Nobody expressly promised that lights would be furnished, but within a few minutes after the respondent had complained men appeared in the hold of

the vessel and commenced to work on the lights which previously had been burning, but which had gone out. After working some little time without bringing the lights on, these men disappeared, and the respondent testified that he thought they did not have the necessary tools or appliances and that they would return within a reasonable time and make such repairs as were necessary. This was, in our opinion, sufficient to show a demand for lights and an implied promise to furnish them. In *Johnson v. North Coast Stevedoring Co.*, 109 Wash. 236, 186 Pac. 663, touching this question, we said that the rule is

". . . that, where an employee goes to work at a place that is, or with machinery and implements which are, defective or dangerous, and he complains to the master of such condition, and gives him to understand that he will quit work unless such condition is remedied, and the master gives the servant assurances that such condition will be remedied, the latter may continue at his labor for such reasonable length of time as it would appear proper for the repair to be made, or the promise of the master to be complied with, provided, he continues at such work relying upon the promises or assurances, and that, under these conditions, the workman will not be held to have assumed the risk. Nor is it necessary that the workman should say in express words that he will stop work unless the repairs are made, but it is sufficient if his words and conduct are such as to indicate to the employer that such was his intention; nor is it necessary that the employer should make any absolute or express promise or assurance of repair or to remedy such defect, but such promise or assurance may be implied from the words and acts of the employer."

It is clear to us that, under that rule, when the respondent continued to call for lights, the appellant was sufficiently informed that, if lights were not furnished the respondent would cease work, and that the fact that

men appeared to fix the lights was such conduct upon the part of the employer as to amount to a promise to comply with respondent's demand. It was only a few minutes from the time light was called for that the men appeared in the hold for the purpose of fixing them so they would burn, and it was only a few minutes after these men left, without making the lights burn, until the respondent was injured. We are, therefore, of the opinion that there was no assumption of risk, or, at least, that that was a question for the jury.

[3] The trial court refused to give an instruction requested by appellant, setting forth in detail the duty of the employer to the respondent and defining the negligence which was necessary to be shown in order to hold appellant liable; also a request on assumption of risk. It may be that these requests properly stated the law, but it was not necessary that the court instruct in the language of the appellant. It seems to us that the instructions given by the court amply covered the whole case, for it told the jury that if they found that the light in the inshore wing of the hold was not burning and that that fact had been communicated to the ship's officers and they had attempted to make the necessary repairs, and the plaintiff was justified in believing that they were proceeding to repair the lights and make them burn, and that under those circumstances he continued to work and while so working, by reason of the fact that there was an insufficient light, and without negligence upon the part of the respondent, he stepped into the hole and was injured, then there should be a verdict for the respondent. The court then proceeds to fully, and we think correctly, instruct the jury concerning assumption of risk. These instructions correctly covered the whole case and the substance of appellant's requests.

17—141 WASH.

[4].. Appellant further complains that the court erroneously instructed the jury that it might compensate respondent for future pain and suffering and reduced ability to work and earn money, because, it is claimed, there was no testimony upon which these items could be based. We have carefully read the testimony on this feature of the case and are satisfied that the instruction was right and that there was testimony upon which to base it. The jury had a right, from the testimony, to conclude that, at the time of trial, the respondent was still in a somewhat crippled condition and that his earning power, because thereof, would be lessened, at least for some time to come. There was also testimony from which the jury might believe that at the time of the trial the respondent was still suffering more or less pain and would, at least for a time in the future, continue to suffer.

[5] Complaint is made about the size of the verdict, which was $1,325. A small portion of this was on account of doctor's bills. The respondent had suffered a Pott's fracture of the left leg. The usual treatment was given him. For some three months he was unable to perform much, if any, labor, and after that time his earning capacity was somewhat decreased. It seems to us that the verdict is fairly moderate and that, at least, it is not so excessive as that we would be justified in interfering with it.

The judgment is affirmed.

TOLMAN, C. J., MAIN, MITCHELL, HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.

ASKREN, J. (dissenting)—I dissent for the reason, that the case of *Alto v. Hartwood Lumber Co.,* 135 Wash. 368, 237 Pac. 987 is controlling and *State ex rel. Luckenbach Steamship Co. v. Superior Court,* No. 19812, was correctly decided.