740

[No. 30032. Department One. December 19, 1946.]

THE STATE OF WASHINGTON, on the Relation of Western Canadian Greyhound Lines, Limited, Plaintiff, v. THE SUPERIOR COURT FOR KING COUNTY, Robert M. Jones, Judge, Respondent.[1]

¹Reported in 175 P. (2d) 640.

*Ballinger, Hutson & Truscott,* for relator.

*Mifflin & Mifflin,* for respondent.

JEFFERS, J.—This is an original application for a writ of prohibition made to this court by Western Canadian Greyhound Lines, Limited, a corporation (hereinafter referred to as relator), to prevent and prohibit the superior court for for King county, Honorable Robert M. Jones, Judge, from taking jurisdiction of a certain action instituted by L. M. Norton *et al.* against relator in the superior court for King county, being No. 372173 of the files of that court. The plaintiffs in the action are all residents of King county, Washington, and the defendant (relator herein) is a foreign corporation, organized and existing under and by virtue of the laws of the Dominion of Canada, with its principal place of business in Calgary, province of Alberta.

The cause of action, as set out in the complaint, was based upon a claim for damages to the persons and property of plaintiffs, as the result of a collision which is alleged to have occurred in the province of British Columbia.

As above stated, plaintiffs' action was commenced in the superior court for King county. The summons was served

upon one of relator's stage drivers, as agent of relator, in Ferry county, Washington.

Respondent court has filed a demurrer to the application for the writ, upon the ground that the application does not state facts sufficient to constitute any cause for relief sought by relator.

Upon the filing of the application for the writ, a show cause order was issued to the lower court, requiring it to appear on August 30, 1946, and show cause, if any it had, why a writ of prohibition should not issue as prayed for by relator, and why such court should not be prohibited and restrained from overruling the motion of relator to quash the service of summons.

We are of the opinion that, under Rule 30, Rules of Court (18 Wn. (2d) 27-a), effective March 2, 1944, one who is required to show cause on the filing of an application for an original writ, is required to show any and all the causes he or it may have why the writ should not issue. In other words, the rule does not contemplate that the hearing on the application may be presented piecemeal. It is true that at the hearing he may question the sufficiency of the application or otherwise move against it, but in our opinion he must bring to this court all the record which he deems necessary for a determination of the question of whether or not the writ should issue, so that if any contention which may be made as to the sufficiency of the application is held not to be well founded, this court may decide the principal question of whether or not the writ should issue.

In the instant case, as stated, a demurrer to the application was filed, and no other return was made in answer to the show cause order. However, we have before us, as a part of the application, all the affidavits which were read in support of and in opposition to the motion to quash the service before the trial court, and the application even refers to, and by reference makes a part thereof, the affidavit of Osee W. Noble, which affidavit was not filed until after the hearing on the motion to quash.

In view of the situation here presented, we are of the opinion we have before us all the facts which were or could

be presented in connection with the question of whether or not the trial court erred in refusing to grant relator's motion to quash the service of summons and whether or not the trial court had jurisdiction to hear and determine the issues which might be presented in the action.

As we read the record before us, there is no dispute as to the facts, except as to whether relator used the highways of this state only during the time its regular route was closed because of snow, or used such highways at other times also.

The undisputed facts, with the exception above noted, may be stated as follows: Relator is engaged in the business of operating stages for the carriage of passengers and express for hire within the Dominion of Canada. It is not qualified to do business in the state of Washington. Relator has never appointed an agent within the state of Washington, as required by Rem. Rev. Stat., § 3854, or at all. While the ordinary routes of relator's stages are wholly within the Dominion of Canada, at certain seasons of the year a portion of one of these routes becomes wholly or substantially impassable by reason of snow conditions, and as a result, three of its stages proceeding from one Canadian point to another detour from their ordinary course from Trail, to Rossland, to Patterson, B. C., thence across the United States boundary to Northport, Washington, and thence back into Canada via Laurier, Washington, to Cascade Junction, B. C., the distance operated within the state of Washington on this detour being approximately eighty miles.

In order to enter the United States and return to Canada, relator has been required to post, and has posted, with the United States customs department, a carrier bond or bonds conditioned, in effect, that it shall not discharge or take on passengers or goods within the United States, and on entering the United States, relator's baggage compartments on all stages are sealed, and a manifest of passengers is issued, the baggage compartments remaining sealed until such stages re-enter Canada. No passengers are, or ever have been, taken on or discharged, nor have goods of any

kind been received or discharged within the state of Washington from any stage operating over such route.

There are three stages which operate over this route, each in charge of a driver whose sole duty within this state is to drive the stage. Such driver neither has, nor has he had, authority to pick up or discharge passengers or goods, or to collect any money within this state, or to perform any other service except such as is necessary to drive the stage.

In order to avoid interference with its use of highways in the state of Washington, relator, in 1945, applied for and received from the department of public service of the state of Washington, and now has, a certificate for the operation of three stages, in the nature of a certificate of convenience and necessity, which by its terms authorizes relator

" . . . to furnish interstate passenger and express service only between Patterson, B. C. and International Boundary near Laurier, Washington via State Road No. 22 through Northport and Kettle Falls, thence via State Road No. 3."

The certificate contains the following provision:

"Limitations: No service shall be rendered under this certificate from, to or between points in the State of Washington."

To procure this certificate, relator filed with the department an insurance policy such as is required by the laws of the state of Washington for common carriers of passengers by motor vehicles. Relator likewise secured from the director of licenses a license to operate each of the three stages above referred to.

On December 9, 1945, a station wagon belonging to some of the plaintiffs in the action commenced in King county came into collision with one of relator's stages on one of the public highways of British Columbia, commonly known as the Caribou road, as a result of which it is claimed by plaintiffs that the station wagon was damaged and depreciated in the sum of $1,082.84, and that the cost of transporting the same from British Columbia to Seattle was $152.69; that Wally Soderberg, one of the plaintiffs, received certain physical injuries, to his damage in the sum

of $5,540; and that plaintiff Lauren Gallagher received physical injuries, to his damage in the sum of $1,900. It was to recover the damages above referred to that plaintiffs commenced an action by filing their complaint in the superior court for King county, which complaint was never served upon relator or any of its officers or agents, and by causing a summons to be served in Ferry county, Washington, upon a driver of one of relator's stages, while such driver was operating a stage over the detour hereinbefore referred to.

Relator, believing that it was not and is not subject to the jurisdiction of the superior court for King county and that the purported service of summons was void, appeared specially in such court and moved to quash the service of summons, filing the affidavits of W. J. Truscott and Duncan Robertson in support of the motion. In opposition to this motion, plaintiffs filed the affidavits of J. D. McDougall and Wesley J. Mifflin, attorney for plaintiffs. After the hearing on the motion to quash, plaintiffs, with the consent of counsel for relator, filed the affidavit of Osee W. Noble, hereinbefore referred to.

Relator's motion to quash came on for hearing, and after the court had considered the affidavits and the argument of counsel, it orally announced its opinion that the operation of the stages above referred to over highways in the state of Washington, whether constant in practice or only on such occasions as the regular route in Canada was impassable because of snow conditions, constituted doing business within the state of Washington, and that the driver of one of such stages was a proper agent of the relator upon whom service of process could be made. The court then announced that it overruled the motion to quash. At the request of counsel for relator, the court stayed the signing of an order until relator should have the opportunity to apply to this court for a writ of prohibition against the further prosecution of the action in the superior court.

It is relator's contention that the superior court for King county at no time had, nor has it now, jurisdiction of either the subject matter of the action or the person of relator, for the following reasons: (1) that relator is not doing,

and has not done, any business within the state of Washington of a kind or character to confer jurisdiction over relator by such superior court; (b) that the stage driver upon whom process was served was not an agent of relator within the meaning of Rem. Rev. Stat., § 226 [P.P.C. § 2-13], upon whom process could be served, binding upon relator and bringing it within the jurisdiction of the superior court for King county.

It is further stated in relator's application that the superior court for King county is without jurisdiction in the cause, and the proceedings against relator are without due process of law; nevertheless, unless it shall be prohibited from so doing, such superior court, and the judge thereof, will enter an order overruling relator's motion to quash, will proceed further in the action on the merits to final judgment, will force relator to defend the action at a place removed from its principal place of business, will subject it to great expense for witnesses, and compel it to make its defense at a great disadvantage. The application further states that relator has no plain, speedy, or adequate remedy in the ordinary course of law.

■ Question No. 1, as stated in respondent's brief, is: "Will this court entertain an application of a relator for a writ of prohibition where the brief filed in support thereof includes no 'Statement of Questions Involved'?"

The above question is propounded and based upon the following statement in respondent's brief:

"Relator, in lack of compliance with rule 16 of this court, providing:
" 'In all appeals, the brief of appellant shall consist of the following matters, headed by the title thereof . . .
" '(b): Statement of Questions Involved . . . ,' in connection with its application for writ of prohibition herein, has failed to include in its brief any 'Statement of Questions Involved.' "

It is apparent, of course, that the above rule relative to appeals, as stated by respondent, does not apply to this proceeding. However, Rule 16, Rules of Court, 18 Wn. (2d)

17-a, in effect March 2, 1944, does contain the following provision:

"When the cause is one involving the exercise of the supreme court's original jurisdiction, the applicant's brief shall consist of . . . (b) Statement of questions involved."

Respondent, other than as above stated, does not argue this matter in its brief. In view of the fact that in both the application and brief of relator it is made to appear with sufficient clearness what questions are presented, we are of the opinion there has been a substantial compliance with the rule.

Respondent, by its demurrer, challenges the right of relator to review this matter by a writ of prohibition, asserting that it affirmatively appears that respondent is not proceeding "without or in excess of the jurisdiction of such tribunal," and that relator has "a plain, speedy and adequate remedy in the ordinary course of law."

We shall first discuss the general question of when and under what circumstances the writ of prohibition may be granted.

Rem. Rev. Stat., § 1027 [P.P.C. § 17-1], provides:

"The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person."

Rem. Rev. Stat., § 1028 [P.P.C. § 17-3], provides:

"It may be issued by any court, except police or justices' courts, to an inferior tribunal, or to a corporation, board or person, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It is issued upon affidavit, on the application of the person beneficially interested."

It is stated in 5 Bancroft's Code Practice and Remedies 5303, § 4040:

"The writ of prohibition issues, as above noted, to arrest the proceedings of an inferior court when such proceedings are in excess of the court's jurisdiction; and, according to a frequently stated rule, the issuance of the writ is condi-

tioned upon the absence of a plain, speedy and adequate remedy in the ordinary course of the law. Hence, two factors are necessary to the issuance of the writ; absence or excess of jurisdiction, and absence of an adequate remedy in the ordinary course of the law. If either is missing the writ will not issue. While the courts have generally adhered to this view, some of the decisions contain a suggestion that the absence of any other remedy is not indispensable, and the authorities have not always been consistent. [Note 19]."

The text, in note 19, refers to and quotes from many Washington cases which indicate that this court has not always been consistent relative to the question of when prohibition will lie. In the case of *State ex rel. Potter v. Superior Court*, 135 Wash. 344, 237 Pac. 717, this court stated the rule to be as follows:

"A writ of prohibition lies to restrain courts from proceeding in matters 'without or in excess of' their jurisdiction, and then only where there is no adequate remedy by appeal."

In *State ex rel. O'Brien v. Police Court*, 14 Wn. (2d) 340, 128 P. (2d) 332, 141 A. L. R. 1257, we referred to Rem. Rev. Stat., §§ 1027 and 1028, and stated that these sections require the existence of two conditions in order to make the writ of prohibition available: (1) absence or excess of jurisdiction, and (2) absence of a plain, speedy, and adequate remedy in the ordinary course of legal procedure (citing cases and 5 Bancroft, Code Practice and Remedies (5th ed.) 5304, § 4040). The opinion states at p. 348:

"The question as to what constitutes a plain, speedy, and adequate remedy is not dependent upon any general rule, but upon the facts of each particular case, and its determination therefore rests in the sound discretion of the court in which the proceeding is instituted. [Citing authority.]"

The text last above referred to, in discussing the question of "Adequacy of Other Remedy," states in § 4041, p. 5305:

"Of course, the question as to what constitutes a plain, speedy and adequate remedy is one resting in the discretion of the individual court, and is largely dependent upon the facts of each particular case.".

The same text, at p. 5307, § 4043, states:

"Where there is a speedy and adequate remedy by appeal, the writ of prohibition will not be issued. However, it is the *adequacy* of the remedy by appeal, *not its mere existence,* which defeats the right to a writ of prohibition." (Italics ours.)

At p. 5309, § 4045, the same text discusses some of the circumstances under which the courts have considered the remedy by appeal inadequate, one of which is where it appears that a court is proceeding *without first having acquired jurisdiction,* citing *State ex rel. Wood v. Superior Court,* 76 Wash. 27, 135 Pac. 494. In the cited case, what was held to be a will contest was commenced after the time had expired for the filing of such a contest. We noted the questions to be determined were:

"First, if the superior court failed *to acquire jurisdiction,* will the writ issue? Second, if the contest was not instituted within the time fixed by statute, can the court acquire jurisdiction?" (Italics ours.)

In holding that prohibition was the proper remedy, we noted:

"It is contended that there is a plain, speedy and adequate remedy by appeal, and for that reason the writ in any event should not issue. But the law appears to be that, where the court is proceeding with a case *without first having acquired jurisdiction,* it presents a proper case for the invocation of the writ of prohibition. . . .

"Where the statute authorizes the contest of a will, and specifies the time within which such contest may be instituted, the court has no jurisdiction to hear and determine a contest begun after the expiration of the time fixed in the statute; neither does a court of equity have power to entertain such jurisdiction. [Citing cases.]" (Italics ours.)

In the case of *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630, L. R. A. 1917F, 905, it appears that M. H. Sorrell and wife brought an action in the superior court for Grant county against H. N. Martin and wife, to compel defendants to surrender for cancellation a certain note and mortgage upon land in Grant county given to secure such note. Martin and wife, who were, and for many

years had been, residents of Lincoln county, appeared in the action by demurrer and motion to change the venue to Lincoln county. The trial court denied the motion, holding that the action was a local one and the case was triable in the county where the land was situated. Martin and wife applied to this court for a writ of prohibition.

The respondent insisted that this court should not and could not, under the authority of the doctrines to which the court had attached itself, hear the petition of the relators; that, notwithstanding the fact that they might be residents of Lincoln county and might be entitled to a change of venue, the question might be raised upon appeal; and that the court would not review the error of the court below by the issuance of an extraordinary writ. This court did not agree with respondent's contention, and in granting the writ stated:

"But if it be held that a court having jurisdiction may erroneously exercise that jurisdiction, and that its rulings might be adequately reviewed on appeal, it does not follow that the court may so proceed in all cases without denying to a litigant that speed and adequacy of remedy which is sanctioned and guaranteed by the statute."

The opinion, after referring to the statutes relative to change of venue, stated that:

"The claim for change of venue, when once asserted, no question of fact being involved and no discretion of the court invoked, is more than a privilege; it is a right."

The opinion continues:

"It would seem, if the statute grants a right that does not depend upon the merit of the case, but is independent of the merit of the case, that a litigant should not be put to the hazard, delay, and expense of a trial upon the merits as a prerequisite to the assertion of the right. . . .

"Wherefore it may be said, where there is a right to a trial in a particular place, which right is independent of the issue as tendered by the complaint, an adequate remedy means a trial in the first instance by a court having jurisdiction to hear and determine the merits.

"To rule otherwise would bring us to a holding that, although the right to a change depended in no way upon a

*controverted fact of residence* [italics ours], the defendant would have to meet the delay and expense of a trial, and possibly suffer a judgment (if he have clever counsel he would stand mute and make no defense to the merits), which we would be willing to sustain if we were free to do so. Before we could even consider the merit of the case, we would have to decide the question of venue, or the question of jurisdiction, and do that which ought to have been done in the first place, remand with directions to change the venue and retry the case; and for the reason that the court *did not have jurisdiction*. If we would have to so hold on appeal, why should we not say so now, the record being before us in the same form as it would come on appeal?

"It requires no argument to convince the writer [Chadwick, J.] that such a situation would be intolerable, and such as the law has sought to avoid by providing a means whereby the appellate court can keep the stream of justice flowing between its proper banks."

To the same effect is *State ex rel. Owen v. Superior Court,* 110 Wash. 49, 187 Pac. 708.

See, also, *State ex rel. Grays Harbor Commercial Co. v. Superior Court,* 118 Wash. 674, 204 Pac. 783, where an action was commenced against Grays Harbor Commercial Company, a corporation, in the superior court for King county. In granting a writ of prohibition restraining the superior court from proceeding with the case, we held that relator was not transacting business in King county, and that service of summons was not had upon a proper agent of relator. The opinion states:

. "No jurisdiction having been obtained over the corporation, the situation is the same as though no service had been made, and the court cannot send the case to another county, for there is no action pending which is subject to transfer."

To the same effect: *State ex rel. Seattle Nat. Bank v. Joiner,* 138 Wash. 212, 244 Pac. 551.

We may say in passing that we appreciate that Rem. Comp. Stat., § 206, which was construed in the two cases last above cited to relate to jurisdiction and not to venue, was repealed by Laws of 1927, chapter 173, p. 194, § 4, and re-enacted by § 1 (see Rem. Rev. Stat., § 205-1).

In the case of *State ex rel. Hopman v. Superior Court*, 88 Wash. 612, 153 Pac. 315, it developed in the course of the proceedings that Anna Hopman was a necessary party to the action. Anna Hopman was a resident of Cook county, Illinois. While she was personally served with a notice in form as ordered by the trial court, the notice did not comply with Rem. & Bal. Code, § 228, relative to service on a nonresident. Anna Hopman appeared specially and objected to the jurisdiction of the court, and moved that the service of the notice on her be quashed. This motion was overruled, and an original application was then filed in this court, praying for a writ of prohibition directed against the superior court for Snohomish county. The opinion states:

"From what has already been said, it appears that the court was proceeding without first having *acquired jurisdiction*, either by service of the process upon Anna Hopman in Cook county, Illinois, personally, or by the appearance which she subsequently entered. The rule appears to be well settled that, where the jurisdiction of the court does not *depend upon some controverted fact to be determined by it*, and the court is proceeding without or in excess of its jurisdiction, the writ of prohibition will lie. [Citing cases.]" (Italics ours.)

In the case of *State ex rel. Atkins v. Superior Court*, 1 Wn. (2d) 677, 97 P. (2d) 139, we stated:

"Respondent argues that relator has made no case for the issuance of a writ of prohibition, because it does not appear that the trial court is acting without or in excess of its jurisdiction, and because an adequate remedy by appeal exists. We hold that, in indicating that it will proceed to hear, in the divorce action, the issues raised by Mr. Gerts' cross-complaint, the trial court is acting in excess of its jurisdiction, as that action has abated, the court having only jurisdiction to enter an order of dismissal. The death of Mrs. Gerts is admitted. *The jurisdiction of the court does not depend upon any controverted fact which it must determine.* [Citing *State ex rel. Hopman v. Superior Court, supra.*]" (Italics ours.)

In accord with the principle last above announced, see, also, *State ex rel. Case v. Superior Court*, 23 Wn. (2d) 250, 160 P. (2d) 606.

In *State ex rel. Barks v. Superior Court,* 144 Wash. 44, 257 Pac. 837, we held prohibition was the proper remedy to restrain the superior court for Skamania county from trying an action for want of proper service of summons, where the summons and complaint were served on the relator on Sunday. The opinion states:

"The early decisions of this court on the question as to when a writ of prohibition will issue are not altogether harmonious. However, in the case of *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630, L. R. A. 1917F 905, this court, speaking through Chadwick, J., has, in an exhaustive and carefully considered opinion, reviewed all of our earlier cases, and has laid down the rules governing applications of this kind, and in accord with the principles there announced we hold that prohibition is the proper remedy in this case."

We call attention to the fact that, in the cited case, nothing is said relative to the inherent jurisdiction of the court, although the case was decided subsequent to the cases of *State ex rel. Martin v. Superior Court,* 101 Wash. 81, 172 Pac. 257, 4 A. L. R. 572, and *State ex rel. Park v. Superior Court,* 142 Wash. 366, 253 Pac. 111, cited and particularly relied on by respondent herein, and to which we shall later refer.

We call particular attention to the closing paragraph of the *Barks* case:

"We hold, therefore, that by the service of summons on the first day of the week, the court acquires no jurisdiction of the person of the party upon whom the summons is served, unless by some act on the part of the defendant this irregularity is waived and jurisdiction conferred.

"The writ will therefore issue."

The headnote to the cited case states:

"PROHIBITION—ADEQUACY OF REMEDY BY APPEAL—WANT OF JURISDICTION. Where the facts are admitted and the court is proceeding with a cause *without jurisdiction,* the remedy by appeal is inadequate, and prohibition lies." (Italics ours.)

The cited case has never been overruled by this court. It should be kept in mind that, in the instant proceeding,

it appears without dispute that relator is a foreign corporation, having no resident agent or office in the state of Washington; that the cause of action against relator, if any exists, arose in British Columbia, and did not occur and was not caused as the result of relator's operations in this state.

Respondent's contention that a writ of prohibition will not issue to review the question of whether the trial court had *acquired* jurisdiction of the person of relator and the subject matter of the action is based on the assumption that the trial court had inherent jurisdiction of the action; that the trial court, having such inherent jurisdiction, in proceeding to pass upon the question of whether or not it had acquired jurisdiction of relator by the service of summons upon its stage driver, was only exercising its judicial function; and that, if the court committed error, the proper remedy is by appeal and not by writ of prohibition. In support of its contention, respondent cites and particularly relies upon the cases of *State ex rel. Martin v. Superior Court*, 101 Wash. 81, 172 Pac. 257; *State ex rel. Teeter v. Superior Court*, 110 Wash. 255, 188 Pac. 391; and *State ex rel. Park v. Superior Court*, 142 Wash. 366, 253 Pac. 111.

We are of the opinion the rule announced in the cases last above referred to is not applicable to the facts in the instant case. It is evident that this court, in the cited cases, did not have, and could not have had, in mind a situation such as here presented. None of the cited cases involved an action against a foreign corporation, nor did they involve a cause of action arising outside of this state.

We are clearly of the opinion the superior courts of this state do not have inherent jurisdiction to hear and determine an action against a foreign corporation, where the cause of action arose outside of this state and was not the result of any operation of the corporation in this state.

However, a foreign corporation may be amenable to the jurisdiction of the superior courts of this state if it is actually transacting business within the state and has a proper agent in the state upon whom service of process may be made. But before a foreign corporation, under circumstances such as above stated, is subject to such juris-

diction, it must affirmatively appear that the corporation is actually transacting business in the state and that service of summons has been made upon a proper agent of the corporation. It is just as vital to jurisdiction that proper service be made upon an authorized agent as it is that the corporation be doing business in the state.

 It seems to us that, where it appears from the un-·disputed facts that the trial court did not and could not acquire jurisdiction of the person of a foreign corporation, under the rule announced in the *Barks* case, *supra,* the court' would be proceeding without jurisdiction, that the remedy by appeal would be inadequate, and prohibition would lie.

It is an admitted fact in this case that relator's stage drivers are the only persons who are within, or come within, the state of Washington, who represent relator in any capacity; so, if these stage drivers are not proper agents upon whom summons may be served in an action such as the one heretofore referred to, no jurisdiction of the person of relator can be obtained by the courts of this state, and it would seem a useless and needless thing to require relator to go to trial and then be compelled to appeal, when the first thing this court would be required to decide would be whether or not the court had jurisdiction of the person of relator. As stated by Judge Chadwick in *State ex rel. Martin v. Superior Court,* 97 Wash. 358, 166 Pac. 630, "If we would have to so hold on appeal [that the trial court was without jurisdiction], why should we not say so now?"

It then remains to be determined whether or·not the superior court did or could acquire jurisdiction of relator herein.

Rem. Rev. Stat., § 226, in so far as applicable, provides:

"The summons shall be served by delivering a copy thereof, as follows: — . . .

"9. If the suit be against a foreign corporation or non-resident joint stock company or association doing business within this state, to any agent, cashier or secretary thereof."

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the State in such manner and to such

extent as to warrant the inference that it is present there. *And even if it is doing business within the State the process will be valid only if served upon some authorized agent.* . . . Whether the corporation was doing business within the State and whether the person served was an authorized agent are questions vital to the jurisdiction of the court." (Italics ours.) *Philadelphia & Reading R. Co. v. McKibben,* 243 U. S. 264, 61 L. Ed. 710, 37 S. Ct. 280.

See, also, to the same effect, *Simon v. Southern R. Co.,* 236 U. S. 115, 59 L. Ed. 492, 35 S. Ct. 255; *Old Wayne Mut. Life Ass'n v. McDonough,* 204 U. S. 8, 51 L. Ed. 345, 27 S. Ct. 236; and *Bergold v. Commercial Nat. Underwriters,* 61 F. Supp. 639, wherein it is stated:

"The courts uniformly hold that a foreign corporation, in order to be amenable to process in a jurisdiction other than that of its domicile, must be doing business in such jurisdiction *and that service must be effected upon an agent authorized by appointment or law to receive service.* . . .

"The question of the type of agent which may be served with process in order to subject a foreign corporation to the jurisdiction of the court *is a separate and distinct question from that of what constitutes the doing of business by the foreign corporation.* . . . The test of a particular agency in determining whether it is such as to render service of process on the agent valid as to the foreign corporation is often based upon the discretion or responsibility vested in the agent." (Italics ours.)

See, also, *Amtorg Trading Corp. v. Standard Oil Co.,* 47 F. Supp. 466, 468 [2]; *Hinchcliffe Motors v. Willys-Overland Motors,* 30 F. Supp. 580, 582[2]; *Carnegie Office Appliance Co. v. Edison,* 28 F. (2d) 626; *Walton N. Moore Dry Goods Co. v. Commercial Industrial Co.,* 276 Fed. 590.

That the driver of the stage upon whom service was attempted to be made was an agent of relator, acting in a limited capacity, is not questioned, but relator contends he was not such an agent as is contemplated by the statute, upon whom service could be made in this case.

We find the following general statement relative to the appointment of an agent by a foreign corporation in Restatement of the Law, Conflict of Laws, 140, 141, § 91:

"A state can exercise through its courts jurisdiction over a foreign corporation which has appointed an agent or a public official in the state to accept service of process in actions brought against the corporation in that state, as to all causes of action to which the authority of the agent or official to accept service extends. . . .

"Comment c. *Extent of consent thus given.* If a corporation has appointed an agent or a public official in a state with authority to accept service of process in actions brought against the corporation in that state, the extent of that authority is a question of interpretation of the instrument in which the consent is expressed and of the statute, if any, in pursuance of which the consent was given. The authority may be interpreted to extend to all causes of action, no matter where arising, brought against the corporation in the state, or it may be limited to causes of action arising within the state; it may be revocable at any time, or it may be irrevocable as to causes of action arising within the state prior to an attempt to revoke it."

In 20 C. J. S. 207 under the general heading "Corporations," § 1942 (b), is found the following statement relative to the question of agency:

"Service of process on an agent of a foreign corporation doing business within the state must be on an agent representing the corporation with respect to such business. It must be made on an authorized agent of the corporation who is truly and thoroughly a representative of it, *rather than a mere servant or employee,* or a person whose authority and duties are limited to a particular transaction. The agent must be an agent in fact, not merely by construction of law, and must be one having in fact *representative capacity and derivative authority.* However, it is not necessary that express authority to receive or accept service of process shall have been conferred by the corporation on the person served. It is sufficient if authority to receive service may be reasonably and justly implied.

"The question turns on the character of the agent, and, in the absence of express authority given by the corporation, on a review of the surrounding facts and the inferences which may properly be drawn therefrom." (Italics ours.)

We quote the following statement from 1 Beale, The Conflict of Laws, 379-380, § 89.4:

"Where a foreign corporation *designates an agent to receive service of process* and there is nothing to the con-

trary in the act requiring the appointment of an agent, suit may be brought against the company on a cause of action arising in another state. *But if the corporation has not in fact appointed an agent with such authority* or otherwise expressed its consent, the courts of a state *cannot acquire jurisdiction over the corporation as to causes of action not arising within the state* or out of the business done within the state." (Italics ours.)

See, also, Rottschaefer on Constitutional Law, chapter 21, pp. 860-861.

In *Barrett Mfg. Co. v. Kennedy,* 73 Wash. 503, 131 Pac. 1161, we had occasion to refer to Rem. & Bal. Code, § 226, which, in so far as we are here concerned, is the same as Rem. Rev. Stat., § 226, paragraph 9, and we therein stated:

"But the statute does not require that service in such cases shall be made upon a general or a managing agent; it suffices if it is made upon 'any agent' *with representative authority.*

". . . The words of the statute 'any agent' were intended to have a broad meaning, and must be liberally construed to effectuate the legislative intent. While they may not include *a day laborer or an employee who has no authority to represent the corporation in any way other than to discharge his daily task,* they must be held to include all such agents as represent the corporation in either a general or a limited capacity." (Italics ours.)

The case of *International Shoe Co. v. State,* 22 Wn. (2d) 146, 171, 154 P. (2d) 801, quoted with approval the quotation last above set out from the *Barrett Mfg. Co.* case.

It is not contended here that relator has, by the appointment of a statutory agent or otherwise, consented to jurisdiction; to the contrary, it is alleged in the application that relator has never had an agent residing in the state of Washington, or present therein, except its stage drivers, and that such drivers have no authority to pick up or discharge passengers or goods, or to collect any money within this state, or to perform any service except such as may be required in driving the stages from the point of entry into the United States to the point of exit therefrom.

In *Macario v. Alaska Gastineau Mining Co.,* 96 Wash. 458, 165 Pac. 73, L. R. A. 1917E, 1152, the plaintiff, Macario,

commenced an action in the superior court for King county against the mining company and O'Neill, its foreman, to recover damages for personal injuries claimed to have been suffered by plaintiff as the result of the negligence of the defendants while he was employed by the mining company in its operations in Alaska. The mining company was organized under the laws of New York, and was duly authorized to do business in Alaska. It had never complied with our statute relating to the doing of business in this state by foreign corporations.

Plaintiff sought in this action to have the superior court for King county acquire jurisdiction over the mining company by service of summons upon Robert Munro, as its agent in Seattle. The mining company appeared specially and moved to quash the service of summons. Robert Munro was an employee of the mining company, residing in Seattle, and his title was "Supply and Forwarding Agent." His duty had been to forward from Seattle supplies to the mining company at its place of operation in Alaska. He also had considerable to do with the purchase of these supplies in Seattle, and he also had some additional duties.

This court, in affirming the order of the lower court quashing the service of summons upon Munro as agent for the mining company, stated:

"Conceding, for argument's sake, speaking generally, that this cause of action is transitory, being one which appellant may sue the mining company to recover upon in any court within whose jurisdiction he can find the mining company and *procure lawful service of process upon it,* let us have in mind that this cause of action arose, if at all, in Alaska, where the mining company is doing its principal business. It may be that, if a cause of action should arise in this state against the mining company growing directly out of an *authorized agency act of Munro,* the mining company could be sued thereon in the courts of this state, though its doing business in this state be limited to the particular act creating such cause of action and though it should be held not to be engaged in business generally in this state. We think an examination of the authorities will show that the *place of the arising of the cause of action has been generally regarded as of controlling force* by the courts in determining the question of a defendant foreign

corporation being subject to the process of the court wherein recovery is sought, whenever the question of such foreign corporation doing business generally in the state in which it is sought to be sued is one of doubt." (Italics ours.)

While, in the cited case, this court held the mining company was not doing business in this state, the above statement applies with equal force to the question of whether or not the stage driver, in the instant case, was such an agent as is contemplated by the statute.

*Alaska Pac. Nav. Co. v. Southwark Foundry & Machine Co. and Standard Gas Engine Co.*, 104 Wash. 346, 176 Pac. 357, was an action instituted by Alaska Pacific Navigation Company against defendants in the superior court for King county. The summons and complaint was attempted to be served in King county on the Southwark Company by the delivery of copies to one F. G. Bryant, as its agent, and upon the gas engine company, by delivery of copies to one Allan Cunningham, as its agent. Defendants each appeared specially and separately and moved to quash the service upon it, on the grounds that the person served was not its agent, and also that it was not doing business within the state. The opinion, after referring to and quoting from some of our prior cases, states:

"We think the reasoning in all of these cases recognizes the general rule, which seems to prevail in most if not all of the states having statutes such as ours, that the agent to be served must be one having some authority to represent the principal, *and not a mere servant or employee.* Did either Cunningham or Bryant have any authority to represent, the one the gas engine company, and the other the Southwark company? The only business to be performed was to install the engines under this contract. What was required to so install the engines? The answer must be, mechanical skill only." (Italics ours.)

This court affirmed the order of the lower court quashing the service of summons.

In *Alto v. Hartwood Lbr. Co.*, 135 Wash. 368, 237 Pac. 987, the respondent, Alto, as plaintiff, brought this action in the superior court for Pacific county against appellant, Hartwood Lumber Company, to recover damages for personal in-

juries. Appellant was a corporation organized under the laws of California. It had no fixed place of business in Washington, and no resident agent therein, and did no business therein other than such as may be deduced from the fact that a vessel of which it was part owner was sent by the manager into this state from time to time for the purpose of taking on a cargo of lumber. Alto, a longshoreman, was injured while employed in assisting to load the vessel while it was moored alongside the dock of the Hartwood Mill Company, in the navigable water of Willapa harbor, in Pacific county. The service relied upon to confer jurisdiction was had upon the master of the vessel on a return trip of the vessel to Willapa harbor for a cargo of lumber. The appellant, in response to the summons, appeared specially and moved to quash the service. Its motion being denied, it first demurred to the complaint and subsequently answered to the merits, at all times preserving its special appearance. In holding that the lower court erred in denying the motion to quash the service, we stated:

"We do not here dispute the general principle the case [*Pacific Typesetting Co. v. International Typographical Union*, 125 Wash. 273, 216 Pac. 358, 32 A. L. R. 767] announces, namely, that the tendency of modern legislation has been to make it easy to obtain jurisdiction over foreign corporations. But the statute must be regarded nevertheless—it must clearly appear that the corporation is personally present in the state in the person of the agent, else any judgment against it obtained by service on the agent will be obnoxious to the rule of due process of law."

The question of who, other than public officials, may be served with process in an action against a foreign corporation is discussed at length in 113 A. L. R., beginning at p. 9, and on p. 125, paragraph 16, the following statement is made:

"It may be laid down as a general rule that a mere servant, employee, or clerk, without any discretion or authority to represent the corporation in its business, is not such an agent as may be served with process in an action against a foreign corporation."

The only general rules announced by the many cases we have read from this and other jurisdictions, relative to who is or is not a proper agent upon whom process may be served in an action against a foreign corporation, are the one last above announced, and that the service of process will be valid only if served upon an agent authorized by appointment or law to accept service.

In view of the conclusion we have reached in this case that, under the undisputed facts, the stage driver upon whom service of summons was made was not such an agent as is contemplated by the statute, we are of the opinion it must follow as a matter of law that the service was void; that the superior court for King county never acquired jurisdiction of the person of relator; that, not having acquired such jurisdiction, that court was proceeding without jurisdiction; that the remedy by appeal would not be adequate; and that a writ of prohibition should issue herein.

In view of the above conclusion, it becomes unnecessary to pass upon the question of whether or not relator, in using the highways of this state in the manner hereinbefore stated, was in fact doing business within this state, and we express no opinion on that question. Neither do we express an opinion on the further question of whether or not a stage driver of relator, while driving over the highways of this state, under the circumstances hereinbefore set out, would be a proper agent upon whom service of process could be made in an action commenced in the superior court for King county, based upon a claimed cause of action occurring on the highways of this state as a result of the operations of relator upon such highways.

We are therefore of the opinion the demurrer of respondent to the application should be and it is overruled, and the writ of prohibition will issue as prayed for in the application, prohibiting the trial court from signing the order denying the motion to quash the service of summons and further prohibiting that court from proceeding further in this case.

MILLARD, C. J., ROBINSON, and SCHWELLENBACH, JJ., concur.

MALLERY, J. (dissenting)—I cannot agree that one who secures from this state a certificate of convenience and necessity, bus licenses, and posts the required bond for the purpose of operating busses over a Washington highway, and pursuant thereto does so operate, is not doing business in the state of Washington.

If the relator was doing business in the state of Washington (as I think it was), then under the provisions of Rem. Rev. Stat., § 3854, it was required to appoint an agent within the state upon whom service of summons and complaint could be had. This the relator did not do, but its failure to do so ought not to give it the advantage of being beyond the reach of service, because that would be allowing one to benefit from one's own omission.

I think the bus driver was an agent of the relator and, as such, falls within the purview of Rem. Rev. Stat., § 226, which provides that summons may be served upon any agent of the corporation.

I do not think the fact that the action could have been brought in Canada deprives this state of its jurisdiction. I agree that convenience of the parties would be better served by the bringing of the action in Canada, but I think this state either has jurisdiction of the action or it does not, and that the question of convenience of the parties generally relates to questions affecting changes of venue.

I dissent.