[No. 28939. Department One. July 29, 1943.]

HARRY G. KIMBALL, *Appellant,* v. MARY MOORE,
*Respondent.*[1]

[1]Reported in 140 P. (2d) 498.

*Koenigsberg & Sanford,* for appellant.

*M. W. Vandercook,* for respondent.

STEINERT, J.—This was an action for unlawful detainer of certain residence property. The complaint alleged an oral month to month tenancy, the occupancy thereunder by the defendant, the failure on her part to pay several months' rent, the service of notice upon her terminating the tenancy, the demand by the plaintiff for possession of the property, and the refusal by the defendant to vacate. The answer admitted the present occupancy of the premises by the defendant and the service upon her of the alleged notice of termination of tenancy, but denied generally the other allegations of the complaint, and specifically denied that the occupancy by the defendant was under a month to month tenancy or under any other form of rental agreement. The answer further set forth affirmatively two additional defenses: (1) that the defendant was in possession of the property as a life tenant under an oral agreement with the plaintiff and his deceased wife, which agreement, it was alleged, had been fully performed by the defendant; and (2) that the plaintiff could not maintain in his individual capacity alone an action which involved an interest of his deceased wife's estate. Plaintiff's reply put in issue the affirmative defenses.

The cause was tried to a jury, which returned a verdict for plaintiff. The defendant moved for a new trial, basing her motion on five distinct grounds. The trial court granted the motion specifically on two of the grounds: (1) insufficiency of the evidence to justify the verdict, and because the verdict is against law;

and (2) error in law by reason of the court's failure to give certain instructions requested by the defendant. From the order granting a new trial, the plaintiff appealed.

Appellant assigns error on the part of the trial court (1) in granting a new trial upon either of the two grounds specified in the order, and (2) in admitting certain testimony offered by the respondent.

The first branch of the initial assignment necessitates a review of the evidence. There are certain facts about which there is no dispute, and these we shall state first.

Respondent, Mary Moore, was sixty-seven years of age at the time of the trial of this action in 1942. For many years prior to 1938, she and the appellant, Harry G. Kimball, and his former wife, Edith M. Kimball, now deceased, had been close personal friends and lived in the same general neighborhood in the city of Seattle. Respondent was living alone in the fall of 1938 and occupied a room, or suite of rooms, in the home of another woman; the Kimballs resided in a house not far distant. Over the course of years, the parties had visited each other frequently, and the respondent had often assisted Mrs. Kimball in her domestic work. The Kimballs, in turn, had manifested in many ways their friendship and solicitude for the respondent because of her age, decrepitude, and loneliness.

Respondent had two small life insurance policies, and, in October, 1938, took the cash surrender value of one of them in the sum of one hundred fifty dollars and loaned the money to the Kimballs. A short time thereafter, it became necessary for respondent to vacate the room, or rooms, which she was then occupying, and the Kimballs volunteered and undertook to find her a suitable place of abode.

About this same time, the Kimballs entered upon negotiations looking to the purchase by them of the property involved in this action. This property con-

sisted of a five-room house located near the Kimball home.

During the course of these negotiations between the Kimballs and the owner of the property, respondent endeavored to obtain the cash surrender value of her second policy amounting to $109.56, with the view of turning the proceeds over to Mrs. Kimball. It appears that respondent at first had some difficulty in persuading the insurance company to cash the policy, but with the assistance of the Kimballs she finally succeeded in securing the money. When the check for payment arrived, respondent was residing temporarily in the home of the Kimballs, and she thereupon endorsed the check and delivered it to Mrs. Kimball.

On January 4, 1939, the Kimballs completed their negotiations for the purchase of the property here involved by entering into a real estate contract with the owner of the premises. The sale price was sixteen hundred dollars, of which an initial cash payment of fifty dollars was made at the time of the execution of the agreement, and the balance was made payable in monthly installments of twenty dollars for ten months of each year and fifty dollars for the other two months of the year. After the property had thus been acquired, appellant expended some money, time, and labor in reconditioning the house and premises and installing a stove in one of the rooms. When the house was in readiness, respondent was put in possession thereof by the appellant.

About this same time, respondent, through the efforts of appellant, was placed on public relief and received from the King county welfare department the sum of $15.77 a month. Of this amount the department paid ten dollars each month direct to appellant for the housing accommodations furnished to the respondent. As a part of the arrangement under which respondent was given public relief, the Kimballs agreed in writing "to

take care of her [respondent's] funeral expenses after her death."

About a year and a half after respondent had been placed on public relief, she was granted an old-age pension, and out of the amounts so received she continued to pay appellant the sum of ten dollars each month until October or November, 1941. Upon payment of each of these successive monthly amounts to appellant, he issued to respondent a receipt showing that it was "for rent of rooms" in the property here involved.

In the meantime, on July 12, 1940, Edith Kimball, wife of the appellant, died. The fact of her death is here noted only because many of the conversations concerning which respondent testified upon the trial were had between the two women in the absence of the appellant himself.

Appellant married his present wife, Mabel Kimball, sometime prior to October, 1941, the exact time not being shown by the record. To all appearances, the relations between the appellant and his second wife on the one hand, and the respondent on the other, continued upon the same friendly, as well as business, plane as that which had obtained before the death of the first Mrs. Kimball.

In the latter part of 1941, appellant had difficulty in keeping up the monthly payments on the real estate contract covering the property which respondent was occupying, and he thereupon sought to have respondent increase the monthly amount which she theretofore had been paying. Respondent refused to pay any greater sum, and appellant thereupon, on December 2nd, served upon her a notice to vacate the premises. Upon her refusal to do so, appellant instituted this action.

Beyond the facts thus far stated, the evidence is in serious conflict. Appellant's evidence, consisting for the most part of the testimony of himself and that of

his present wife, was to the effect that the arrangement between the Kimballs and the respondent was simply and solely one whereby appellant rented the property to respondent under a month to month tenancy for ten dollars a month, and that the tenancy had been terminated by the notice to vacate.

Respondent's evidence, consisting solely of her own testimony and that of one disinterested witness, tended to establish a wholly different relationship concerning her occupancy of the property here involved. Their testimony was to the following effect: At the time that the appellant and his first wife became interested in purchasing the property, they did not have the money with which to make the initial cash payment of fifty dollars. They thereupon prevailed upon the respondent to turn in her second life insurance policy and transfer the money to them. This was done upon the agreement that appellant would purchase the property on contract, put it in proper condition for occupancy, and place respondent in possession thereof for the remainder of her life; at the same time, and for the same period, respondent was to pay appellant the sum of ten dollars a month out of the funds derived by her from public relief and later out of her old-age pension. The money which respondent had realized upon her first life insurance policy and thereafter loaned to appellant was in some way absorbed in the general arrangement. Respondent complied with the terms of her agreement and was willing to continue to do so, until appellant sought to increase the amount of her monthly payments. She refused to meet appellant's demands, and insisted upon performance by him of the original terms of the agreement. Thereupon appellant sought to oust her from the premises.

We have not gone into the details of the conflicting testimony, but have given only a general summary of it. Further elucidation thereon is unnecessary other than to say that the evidence submitted by the parties

and admitted by the trial court supports the various contentions of the parties and was sufficient to take the case to the jury upon both theories of tenancy.

It is the settled rule in this state that, when, in a case involving disputed questions of fact upon which the evidence is in conflict, an appeal is taken from an order granting a new trial upon the ground of insufficiency of the evidence to justify the verdict, and no purely legal question is involved, the only question which this court will consider is whether the trial court abused its discretion in granting the motion. *State v. Cornell,* 152 Wash. 120, 277 Pac. 458, and cases therein cited. In the *Cornell* case, we said:

"This court has repeatedly held that the granting of a new trial upon the grounds stated in the motion and order here in question [insufficiency of the evidence to justify the verdict], rests in the discretion of the trial court, and that the exercise of such discretion will not be disturbed upon appeal, except there clearly appear an abuse of discretion on the part of the trial court in granting such motion."

Subsequent to the decision in that case and in others declaring the same rule, the statute setting forth the grounds for granting a new trial has been modified, so that subdivision 7 of Rem. Rev. Stat., § 399, which formerly prescribed as one of such grounds:

"Insufficiency of the evidence to justify the verdict or the decision, or that it is against law; . . ."

now reads:

"That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law." Laws of 1933, p. 481, § 1 (7) (Rem. Rev. Stat. (Sup.),§ 339 [P. C. § 8225]).

However, since the modification of the statute in that respect, we have repeatedly affirmed the previously settled rule that, where the issue before the trial court does not involve a purely legal question, but arises from a controverted question of fact, the granting of a

new trial is so largely a matter of discretion with the trial court that its ruling thereon will not be disturbed upon appeal except for manifest abuse of such discretion. *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410; *Mathisen v. Norton,* 187 Wash. 240, 60 P. (2d) 1; *Corbaley v. Pierce County,* 192 Wash. 688, 74 P. (2d) 993; *Billias v. Panageotou,* 193 Wash. 523, 76 P. (2d) 987; *Dibley v. Peters,* 200 Wash. 100, 93 P. (2d) 720; *Bystrom v. Purkey,* 2 Wn. (2d) 67, 97 P. (2d) 158; *Nagle v. Powell,* 5 Wn. (2d) 215, 105 P. (2d) 1; *Griffin v. Cascade Theatres Corp.,* 10 Wn. (2d) 574, 117 P. (2d) 651; *Wood v. Hallenbarter,* 12 Wn. (2d) 576, 122 P. (2d) 798.

■ In a number of the cases just cited it is also declared that ordinarily a much stronger showing of abuse of discretion will be required to set aside an order granting a new trial than one denying a new trial. See the *Ahrens, Mathisen, Dibley, Bystrom,* and *Griffin* cases, *supra.*

The instant matter did not involve a pure question of law but rather a controverted question of fact, upon which the trial court exercised its discretion. We are unable to perceive or say that there was any abuse of such discretion and we therefore will not interfere with the action of the trial judge.

■ The second ground of appellant's initial assignment of error relates to the action of the trial court in granting a new trial for the reason that the court failed to give certain instructions requested by the respondent. The question thus raised turns upon the correctness or propriety of certain instructions requested but not given. The appellant failed, however, to set forth in his brief the requested instructions in full.

Rule XVI (5), Rules of the Supreme Court, 193 Wash. 25-a, relating to briefs, reads as follows:

"Each error relied on shall be clearly pointed out and separately discussed under appropriate designated headings. Where there are several assignments presenting the same general questions, they may be dis-

cussed together. *Where an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full."* (Italics ours.)

This rule has been applied where the objections are based on *requested* instructions, as well as where based on *given* instructions. *State v. Hussey,* 188 Wash. 454, 62 P. (2d) 1350.

In the recent case of *Gray v. Davidson,* 15 Wn. (2d) 257, 130 P. (2d) 341, 136 P. (2d) 187, which was an action for damages for alleged malpractice, the jury returned a verdict for the plaintiff. On motion of the defendant, the trial court granted a new trial on the ground of error in giving certain instructions and refusing to give a certain other instruction requested by the defendant. The plaintiff appealed, contending that the instructions as given were correct, that the instruction requested by the defendant was incorrect, and that therefore the trial court erred in holding that it had committed error in the first instance. However, the plaintiff-appellant in that case did not print in full in his brief the instructions given and the instructions requested but refused.

Upon the appeal, this court, while recognizing that the rule above quoted applies as well to requested instructions as it does to instructions actually given, nevertheless held that the particular situation, though apparently within the spirit of the rule, did not come within its strict terms. On rehearing of that appeal, however, we receded from that position and, in an *En Banc* decision, held that the rule did apply to the situation there presented, and for that reason the order granting a new trial was affirmed.

The case at bar presents an identical situation with respect to the failure of appellant to incorporate in his brief the requested instructions, and we must therefore in like manner dispose of it by holding that for the reasons heretofore given that assignment cannot now be considered.

■ Appellant's final assignment of error is based upon the admission of certain evidence adduced by the respondent and objected to by the appellant. Respondent was permitted to testify concerning certain conversations between herself and appellant's first wife, now deceased. Appellant's objection to the evidence was that it was merely hearsay and, besides, contravened the inhibition of Rem. Rev. Stat., § 1211 [P. C. § 7722], relating to conversations with deceased persons.

We will assume, without now so deciding, that some portions of that evidence were objectionable and should not have been admitted. However, in our opinion, appellant cannot raise that question upon this appeal. Whatever error the trial court may have committed in that respect was cured by the verdict, which was in appellant's favor. The only questions properly reviewable upon an appeal are those questions which are involved in the judgment or order from which the appeal is taken, and an order granting a new trial cannot be assailed by the party in whose favor the verdict was rendered, merely on the ground that the trial court committed error against such successful party.

In 5 C. J. S. 106, Appeal and Error, § 1470, appears this statement of the law:

"Generally, and in most jurisdictions, the questions which the reviewing court will consider on such appeal or writ of error [from order for new trial] are such, and only such, as were involved in the motion for new trial and the order granting or denying it. In such jurisdictions the appeal cannot be made the basis of a general review of rulings made on the main trial except as they affect the propriety of the order appealed from; but in some jurisdictions errors in the record which occurred prior to the order from which the appeal was taken and *are fatal to any right of recovery* are before the appellate court for review." (Italics ours.)

We shall refer a little later to the minority rule, or rather the exception to the general rule, as stated in the foregoing quotation.

In *Herman & Marks v. Hass,* 166 Iowa 340, 147 N. W. 740, Ann. Cas. 1917D, 543, the subject is fully discussed, and from that decision we quote the following paragraph:

"However, such errors [errors occurring generally in the trial], if any, are not available to the plaintiff as appellant on this appeal. Errors committed against it on the trial of the case were all cured by the verdict in its favor. Having won the verdict, all errors, if any, proved nonprejudicial to it. The only grievance which it now has is the subsequent order of the court granting a new trial. It is from such order alone that it could appeal. The order granting a new trial cannot be assailed by the appellant upon the mere ground that the trial court committed errors against it upon the trial. For the purpose of sustaining its appeal from the order granting a new trial, the appellant must show, as before indicated, that the record of the trial was free from error as against the appellee. If prejudicial errors were committed against the appellee upon the trial, he was entitled to a new trial. He was none the less entitled to such new trial if errors were also committed as against the plaintiff appellant. The only effect of such errors would be to entitle the plaintiff appellant to a new trial if the verdict had gone against it. If prejudicial errors were committed as against each party, then either would be entitled to a new trial in case of an adverse verdict."

To the same effect are *Bennett v. Ryan,* 206 Iowa 1263, 222 N. W. 16, and *Wolfe v. Miami,* 114 Fla. 238, 154 So. 196.

As indicated in the statement of the rule quoted above, it is held in some jurisdictions that errors in the record which prove *fatal to any right of recovery* are properly before the appellate court for review, even though such errors occurred prior to the order from which the appeal was taken. The case of *Alto v. Hartwood Lbr. Co.,* 135 Wash. 368, 237 Pac. 987, is cited in support of that view. In that case, the defendant, a

foreign corporation, was brought into the action by service of summons upon one of its employees temporarily within the state. The defendant moved to quash the service of process, but its motion was denied. Upon the trial, at which defendant preserved its special appearance, the jury returned a verdict in its favor. Thereafter, the court granted plaintiff's motion for a new trial. On appeal, the order granting a new trial was reversed, and the cause was remanded with instruction to quash the service of summons upon the defendant and permit it "to go hence without delay," for the reason that jurisdiction over the defendant had never been obtained by the service of such process. In its pronouncement of the so-called exception to the rule and its reason therefor, this court said:

"If the record discloses a matter which must necessarily prove fatal to a recovery as a final result, the court should recognize and enforce it at the time it first appears. It would be a needless waste of the time and the energy of both the court and the litigants to continue an action or proceeding where it is made to appear that there can be in the end but a single conclusion. We think such a matter appears in the present record; the trial court, we are constrained to conclude, was without jurisdiction of the person of the appellant."

Manifestly, the decision in that case does not control the situation presented in this one, for here the record discloses nothing which would necessarily prove fatal to respondent's defense. This case falls squarely within the general rule above stated, and we therefore hold that the order granting a new trial cannot be assailed by the appellant on the alleged ground that the trial court committed error in a proceeding which resulted in a verdict favorable to the appellant himself.

The order granting the motion for a new trial is affirmed.

SIMPSON, C. J., MILLARD, BLAKE, and MALLERY, JJ., concur.