IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GABRIEL ESPINOZA, AND IRMA ESPINOZA, husband and wife, and the marital community composed thereof, | ) ) ) ) | No. 31569-0-III |
| Respondents, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| AMERICAN COMMERCE INSURANCE COMPANY, an insurance company, AAA Insurance Agency, a Washington Corporation, and PAMELA S. TAYLOR and JOHN DOE TAYLOR, husband and wife, and the marital community composed thereof, | ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) | |

FEARING, J. — After a fire to their home, Gabriel and Irma Espinoza sued their

homeowner's insurance company, American Commerce Insurance Company (ACIC) for

recovery on the policy. ACIC denied coverage and rescinded the policy claiming that the

Espinozas misrepresented facts when applying for insurance and when seeking recovery

for the loss. Gabriel and Irma Espinoza also sued their insurance broker, AAA Insurance Agency (AAA), and insurance agent, Pamela Taylor.

A jury found that Gabriel Espinoza misrepresented material facts during ACIC's investigation of the fire claim but, contrary to jury instructions, apportioned responsibility to ACIC, AAA and Taylor. Because it could not reconcile the inconsistent responses in the jury verdict, the trial court ordered a new trial. AAA and Taylor thereafter settled. ACIC appeals the trial court's new trial order and also seeks this court's review of the trial court's denial of its pretrial motion for summary judgment and trial motion for judgment as a matter of law. We affirm the new trial order and decline to reach the other assigned errors.

## FACTS

In February 2009, Gabriel and Irma Espinoza purchased a Wapato home. The Espinozas used electric space heaters to heat most of the home. They heated the bathroom with an electric, hardwired, wall-mounted heater.

On October 11, 2010, Gabriel Espinoza called AAA to obtain homeowner's insurance and spoke with AAA agent Pamela Taylor. Taylor interviewed Gabriel on the telephone and prepared a homeowner insurance policy application. The application asked the applicant to describe the home's primary heat source. Gabriel Espinoza claims he told Pamela Taylor that he heated the home with space heaters, although he is not sure if he mentioned space heaters during this initial conversation. Taylor claims Gabriel

2

stated he heated the home with baseboard heat. In answer to the question, Pamela Taylor wrote "electric" on the insurance application.

On October 12, Irma Espinoza went to Pamela Taylor's office to sign the homeowner's insurance policy application. Taylor reviewed the application with Irma, although Irma testified that she only understands about 60 to 70 percent of the English she reads and hears. Regardless, Irma testified that she confirmed with Taylor that the Espinozas used "electricity" to heat their home. Clerk's Papers (CP) at 177. Irma signed the insurance policy application.

On October 12, Pamela Taylor submitted the Espinozas' insurance policy application to ACIC. ACIC issued a homeowner's insurance policy to the Espinozas the same day. It did not attach a copy of the application to the policy.

On November 30, a fire destroyed the Espinozas' home. Fire officials determined that a space heater too close to combustible material likely caused the fire. After the fire, the Espinozas submitted a claim for insurance benefits to ACIC. They requested payment to repair and rebuild their home.

ACIC retained independent adjusters Crawford & Company to investigate the claim. Crawford assigned Jim Rocha to investigate the fire. Rocha went to the Espinozas' home the day after the fire, took photographs, and assessed the damage. Rocha concluded the home was a total loss.

While examining the fire-ravaged home, Jim Rocha spoke to Gabriel Espinoza.

3

Gabriel told Rocha he used electric space heaters to heat the home. Gabriel omitted the fact that the Espinozas also used an electric, hardwired, wall-mounted heater in the bathroom.

As part of its investigation, ACIC conducted Examinations Under Oath (EUOs) of Gabriel and Irma Espinoza and Pamela Taylor. Their accounts differed. Gabriel Espinoza testified at his EUO that he specifically told Taylor that he heated the home using space heaters. Taylor disagreed. She testified during her EUO that Gabriel told her they used electric baseboards to heat their home. Taylor recalled writing "BB," referencing baseboard heating, on a parcel detail form as she interviewed Gabriel. CP at 918-19. Pamela Taylor further testified that, if an applicant informs her that a home is heated by space heaters, she ends the application process and informs the applicant he or she will need to purchase insurance elsewhere. Irma Espinoza testified that she told Pamela Taylor the couple used electricity to heat their home.

ACIC declined payment for the fire loss to the Espinozas' home and rescinded the insurance policy. In a March 29, 2011 letter, explaining the reason for denying coverage, ACIC wrote:

> Your policy contains the following applicable provisions:
> . . . .
> *This coverage is void if, before or after a loss:*
> *a. "you" or any "insured" has intentionally concealed or misrepresented:*
> > *1) a material fact or circumstance that relates to this insurance or the subject thereof; or*

4

> *2) the "insured's" interest herein;*
> *b. there has been fraud or false swearing by "you" or any other "insured" with regard to a matter that relates to this insurance or the subject thereof.*
>
> Your policy provides that there is no coverage for an insured who has intentionally misrepresented a material fact that relates to the insurance before or after a loss. Your policy also provides that there is no coverage for an insured who has falsely sworn to a matter relating to this insurance.
>
> During the application process for your policy, you advised your agent, Pamela Taylor, that your home was heated with baseboard electricity, and you failed to tell her that in heating your home you actually relied solely on space heaters. Had American Commerce Insurance Company known that you used space heaters to heat your home, it would not have underwritten your policy. In going forward with writing your policy, American Commerce Insurance Company relied on your misrepresentation of the heat source in your home; the source of heat for your home was a material fact in the determination of whether a policy would be written for you.
>
> In addition, Mrs. Espinoza, during your examination under oath, you acknowledged that you told Ms. Taylor that the home was heated by electricity. Mr. Espinoza, you, on the other hand, testified that you specifically told Ms. Taylor that you used space heaters in the home. As noted above, had you in fact told Ms. Taylor about the space heaters, American Commerce Insurance Company would not have underwritten your policy.
>
> You have provided false information both during the application process, and the claims process, in an effort to ensure coverage.
>
> For the reasons set forth above, your claim with American Commerce Insurance Company is denied.

CP at 200-03.

## PROCEDURE

On June 30, 2011, Gabriel and Irma Espinoza filed suit against ACIC, AAA, and

Pamela Taylor. In the complaint, the Espinozas alleged ACIC breached the insurance

contract, violated Washington's Administrative Code (WAC) when processing the

5

insurance claim, violated Washington's Insurance Fair Conduct Act (IFCA) LAWS OF 2007, ch. 498, § 1, operated in bad faith, and violated Washington's Consumer Protection Act (CPA) chapter 19.86 RCW.

In their complaint, Gabriel and Irma Espinoza alleged Pamela Taylor breached her fiduciary and common law duties by failing to accurately and truthfully convey to ACIC the information they provided her. In addition, they alleged Taylor breached unspecified express and implied warranties. The Espinozas also alleged Taylor's actions are imputed to AAA under vicarious liability.

On August 30, 2012, ACIC moved for partial summary judgment, asking the trial court to conclude that, as a matter of law, it fully complied with the WACs, IFCA, and CPA and did not act in bad faith. The trial court denied ACIC's motion almost entirely. The court concluded issues of material fact precluded summary judgment on the CPA and IFCA claim, but concluded that ACIC's investigation was reasonable as a matter of law.

The Espinozas moved to exclude as evidence at trial their insurance policy application because ACIC failed to attach the application to the policy as required under RCW 48.18.080. On December 21, 2012, the court granted the Espinozas' request to exclude the physical application from trial.

During trial, Gary Williams, an expert on claims adjustment, testified for Gabriel and Irma Espinoza that ACIC violated several of his "universal rules" developed while in

6

the insurance industry since 1968. Violating such rules amounts to bad faith, according to Williams. ACIC's letter denied the Espinozas' claim because, according to ACIC, the Espinozas advised Pamela Taylor that the home "was heated with baseboard electricity, and failed to tell her that in heating [their] home [the Espinozas] actually relied solely on space heaters." CP at 202. In Gary Williams' opinion, the reasons given for denying the claim make no sense. Williams explained to the jury that "there is absolutely no debate about the fact that the home was heated with a built-in wall heater in the bathroom and a space heater in the living room, so it was not heated solely with space heaters. It ignores the facts." Report of Proceedings (RP) at 512-13. Gary Williams also noted that space heaters are electric. Therefore, the Espinozas did not lie to ACIC when they stated they used electric heat.

ACIC denied coverage because it claimed it would not have underwritten the homeowner's insurance policy had it known the Espinozas used space heaters to heat their home. According to Gary Williams, this defense was false because ACIC had no underwriting guideline that would prevent them from underwriting a house that used space heaters. ACIC had a guideline preventing Pamela Taylor from binding the insurance company to insure a home heated by space heaters, but Taylor could gain approval from ACIC to underwrite an insurance contract for such a home.

At the conclusion of the Espinozas' case, ACIC moved for judgment as a matter of law to dismiss Espinozas' extracontractual claims. ACIC argued the Espinozas failed to

7

prove it unreasonably denied the Espinozas' policy claim, failed to establish noneconomic damages, and failed to prove they incurred rental expenses stemming from the denial of coverage. The trial court granted the motion only to the extent of dismissing any claim for rental expenses. Gabriel and Irma Espinoza lived with family after ACIC denied coverage. They never alleged or proved they incurred any rent or other out-of-pocket expenses as a result of ACIC's denial.

After ACIC, AAA, and Pamela Taylor rested, the court read instructions to the jury. Among the court's instructions were the following:

Instruction 13:

The Plaintiffs have four claims against Defendant ACIC. Those four claims are: 1) that Defendant ACIC failed to act in good faith; 2) that Defendant ACIC violated the Consumer Protection Act; 3) that Defendant ACIC violated the Insurance Fair Conduct Act; and, 4) that Defendant ACIC breached the insurance contract. The Plaintiffs have the burden of proof on each of their four claims.

Defendant ACIC denies it breached the contract of insurance. Defendant ACIC further denies its denial of benefits was unreasonable. Defendant ACIC also claims that Gabriel Espinoza made a material misrepresentation during the application process for the contract of insurance with ACIC and made a material misrepresentation during the Examination Under Oath.

To prove its defense, Defendant ACIC must establish that Gabriel Espinoza made a material misrepresentation with the intent to deceive during the procurement of insurance **and** made a material misrepresentation to ACIC during the Examination Under Oath.

RP at 1367-68 (emphasis added).

8

Instruction 11

If, during the application process, Gabriel Espinoza: 1) made a representation; 2) that was untruthful; 3) was material; 4) and was made with the intent to deceive, ACIC acted properly in rescind[ing] the insurance policy. ACIC has the burden to prove by clear, cogent, and convincing evidence the four above elements.

The untruthful representation was material if, 1) it influenced ACIC's decision to issue the policy; 2) the information helped ACIC to measure the risk under the policy; or, 3) if specific information was asked in regard to a certain matter, it is presumed material unless credible evidence is provided.

There was intent to deceive if Gabriel Espinoza knowingly made the untruthful representation, unless they provide credible evidence that there was not intent to deceive.

A bare assertion, without additional evidence that there was no intent to deceive, is not considered credible evidence for this element.

RP at 1366.

Instruction 22:

This instruction applies to Defendant ACIC. Gabriel and Irma Espinoza have the burden of proving each of the following propositions on their claim of breach of contract: 1) Plaintiffs suffered a loss covered under the policy of insurance; 2) Defendant ACIC did not pay for Plaintiffs' loss; and, 3) the Plaintiffs suffered damages as a direct and proximate result of Defendant ACIC's breach of the insurance contract.

If you find from your consideration of all of the evidence that any of these propositions has not been proved, your verdict should be for ACIC on the claim for breach of contract.

On the other hand, if each of these propositions has been proved, then you must consider the affirmative defenses claimed by ACIC. ACIC has the burden of proving the following affirmative defenses: 1) that Gabriel Espinoza made a material misrepresentation to ACIC's agent during the application for the insurance policy with the intent to deceive; or, 2) that Gabriel Espinoza made a material misrepresentation to ACIC during his Examination Under Oath.

If you find from your consideration of all of the evidence that one or

9

both of these affirmative defenses has been proved, your verdict should be for ACIC on this claim.

On the other hand, if none of these affirmative defenses have been proved, then your verdict should be for Gabriel and Irma Espinoza on this [breach of contract] claim.

RP at 1373-74 (emphasis added).

The trial court provided the jury a six-page verdict form, which contained seventeen questions enclosed over three sections. The first section, proposed by ACIC, asked questions directed to the Espinozas' claims against ACIC. Question one asked the jury whether the Espinozas proved a covered loss occurred. Question two asked whether Gabriel Espinoza made a material misrepresentation during the insurance application process. Question three asked whether Gabriel Espinoza made a material misrepresentation during the EUO. Following question three, the form directed the jury "if you answered 'yes' to either Questions 3 *OR* 4 [sic], sign this verdict form. If you answered 'no' to both Questions 2 *AND* 3, answer Question 4." CP at 1589. The first sentence quoted contains a typographical error, since the direction should refer to questions 2 or 3. ACIC drafted the language and admitted the error during posttrial motions and in its appellate brief. Question four in the first section asked whether ACIC acted in bad faith.

The second section of the special verdict form asked questions concerning Gabriel and Irma Espinozas' claims against AAA and Pamela Taylor. The section first asked if the jury found a covered loss. Later questions asked if Taylor breached duties and if a

10

breach was a proximate cause of loss to the Espinozas. The third section of the verdict contained a special interrogatory, asking the jury to allocate fault between ACIC, AAA, and Taylor if it "believe[d] that both ACIC and AAA/Taylor are jointly responsible for any of the damage." CP at 1593.

After a day of deliberations, the jury returned its verdict. The jury answered "yes" to question one in section one of the verdict form determining that the Espinozas proved a covered loss and finding damages in the amount of $282,616.55. On question two, the jury determined Gabriel Espinoza did not make a material misrepresentation during the insurance application process. The jury answered question three by declaring that Gabriel Espinoza made a material misrepresentation during the claim investigation EUO.

The verdict form instructed the jury to sign the verdict form, if it answered question three, in section one, affirmatively. Instead, the jury, before signing the verdict form, moved to the form's section two, addressing AAA and Pamela Taylor's liability. On question one, the jury found a covered loss occurred. Following question one the court instructed, "[i]f you answered 'yes' to Question 1, sign the verdict form." CP at 1591. If there was a covered loss then AAA and Taylor could not be found responsible, since the agents successfully procured insurance for the Espinozas. The form directed the jury, if it answered "no" to Question 1, answer Question 2, in section two.

Again, before signing the verdict form, the jury moved to the form's third section. Section three contained a special interrogatory instructing the jury to allocate fault

11

between ACIC and AAA/Taylor if it found both ACIC and AAA/Taylor responsible for the Espinozas' damages. Despite its earlier finding that Gabriel Espinoza uttered a material misrepresentation during the EOU, the jury allocated 90 percent of the fault to ACIC and the remaining 10 percent to AAA and Taylor. The trial court polled the jury and all jurors confirmed the verdict.

The trial court excused the jurors to the jury room and, outside their presence, expressed concern that the jury's answer to the special interrogatory found both ACIC and AAA/Taylor responsible for the Espinozas' damages and allocated fault between them despite previously answering a question that entitled both ACIC and AAA/Taylor to a complete defense. The trial court did not wish to ask the jury to continue to deliberate because of its belief that any request would constitute a comment on the evidence. The trial court asked counsel how to interpret the verdict and to determine an unbiased manner by which to direct the jury to continue deliberations. The Espinozas believed the jury returned an inconsistent verdict and moved for a mistrial or new trial. ACIC disagreed and argued the jury's finding with regard to misrepresentation rendered later questions and answers moot. ACIC contended that, had the jury followed the instructions, the jury would have returned a defense verdict. Therefore, ACIC moved for entry of judgment in its favor.

The trial court took a short break and, when it resumed, directed the parties' attention to the third section of the special verdict form, which instructed the jury to

12

allocate fault if it believed both ACIC and AAA/Taylor are jointly responsible for the Espinozas' losses. Based on its reading, the court believed the jury intended to indicate ACIC and AAA/Taylor are responsible for the Espinozas' damages, which it found inconsistent with how the jurors answered section one of the special verdict form. In addition, the court found a possible inconsistency in the answer that Gabriel Espinoza did not make a material misrepresentation during the insurance application process but did during the claim investigation EUO. Because the parties did not agree how to proceed, the court discharged the jury and ordered a new trial pursuant to RCW 4.44.440.

Despite the grant of a new trial, each party filed a posttrial motion to be declared the trial winner. On March 25, 2013, the superior court heard cross motions. The Espinozas moved for judgment as a matter of law or, in the alternative, a new trial pursuant to RCW 4.44.440. ACIC moved the court to enter judgment in its favor and, if the court's previous oral ruling for a new trial was final, to reconsider it. In a thorough and well-reasoned written ruling, the court ordered a new trial "under RCW 4.44.440 and/or CR 59(a)(1) or CR 59(a)(9)." CP at 1761.

The trial court wrote:

> [I]t appeared clear and unmistakable to the Court that the jury's [allocation of fault between ACIC and AAA/Taylor] reflected the jury's intent to render a verdict in favor of the [Espinozas] in the amount of $282,616.55. . . . On the other hand, by answering question number 3 (against ACIC) on page two [finding Gabriel Espinoza misrepresented material facts] and question number one (against AAA/Taylor) on page four [finding coverage], each set of defendants is entitled to a defense

13

verdict. A careful review of the jury instructions and these conflicting answers precludes any reconciliation.

CP at 1757. This internal inconsistency led the court to order a new trial.

After the court ordered a new trial, the Espinozas settled with AAA and Pamela Taylor and voluntarily dismissed all remaining claims against them.

## LAW AND ANALYSIS

### Appealable Orders

We must first identify the assignments of error proffered by ACIC that we will review. ACIC assigns error to the granting of a new trial, the trial court's failure to grant its summary judgment motion, and the trial court's failure to grant its motion for judgment as a matter of law at trial. The Espinozas contend the trial court properly ordered a new trial and ask this court to refuse to review the other assignments ACIC raises because RAP 2.2(a)(9) prevents review of issues collateral to an order granting a new trial. We agree with the Espinozas and decline to entertain the trial court's failure to grant the summary judgment motion and the motion for judgment as a matter of law.

Because of the granting of a new trial, the case is not final in the superior court. As a general principle, we do not allow an appeal until all claims are resolved in the trial court. For example, orders denying a summary judgment motion are not appealable as a matter of right. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 35 n.9, 864 P.2d 921 (1993). One exception to this general principle is an order granting or

denying a motion for new trial.

RAP 2.2 reads, in relevant part:

(a) **Generally**. Unless otherwise prohibited by statute or court rule and except as provided in sections (b) and (c), a party may appeal from only the following superior court decisions:

(1) *Final Judgment*. The final judgment entered in any action or proceeding, regardless of whether the judgment reserves for future determination an award of attorney fees or costs.

. . . .

(9) *Order on Motion for New Trial or Amendment of Judgment*. An order granting or denying a motion for new trial or amendment of judgment.

Despite the provisions of RAP 2.2(a), ACIC argues that, since this reviewing court will decide the one issue involving a new trial, this court should accept the opportunity to review the other two decisions denying it judgment. RAP 2.2(a)(9), like the common law rule addressing the scope of review from a new trial order, prevents review of collateral issues in an appeal of a new trial order, but for one exception.

The common law rule is that an appeal from an order granting a new trial is generally limited to the trial court's reasons for granting a new trial. However, the appellant may also raise additional issues provided they would be dispositive of the case; for example, lack of jurisdiction. A failure to raise a dispositive issue in the first instance is construed as a waiver in the second appeal.

*Cox v. Gen. Motors Corp.*, 64 Wn. App. 823, 826, 827 P.2d 1052 (1992).

ACIC contends its motion for judgment as a matter of law and summary judgment are the kind of dispositive motions to which the *Cox* court referred. The Espinozas demur, contending a party may only raise collateral issues that are dispositive in the sense

15

of jurisdiction or a statute of limitations barring suit. We disagree with both and follow an intermediate position. We rule that the Court of Appeals will review, along with an order concerning a new trial, any denied motion that would dispose of all claims before the trial court.

Five Washington decisions address the question of what assignments of error the appeals court will entertain when also reviewing a grant or denial of a new trial: *Kimball v. Moore*, 18 Wn.2d 643, 140 P.2d 498 (1943); *Alto v. Hartwood Lumber Co.*, 135 Wash. 368, 237 P. 987 (1925); *Toadvine v. Nw. Trust & State Bank*, 128 Wash. 611, 224 P. 22 (1924); *Cox*, 64 Wn. App. at 826; *Dalton v. State*, 115 Wn. App. 703, 706 n.2, 63 P.3d 847 (2003). We address the decisions in chronological order.

In *Toadvine v. Northwest Trust & State Bank*, a jury entered a verdict for the bank during the first trial. The trial court granted the plaintiffs' motion for a new trial, which ruling the bank appealed unsuccessfully. The second trial resulted in a verdict for plaintiffs. During its second appeal, the bank sought review of the trial court's failure to accept its demurrer to the complaint. The *Toadvine* court refused to address the bank's demurrer because the bank failed to raise the issue in the previous appeal. *Toadvine*, 128 Wash. at 614. The court held that when a complaint fails to state facts sufficient to constitute a cause of action, a party should raise the issue on its first appeal or consider it waived. *Toadvine*, 128 Wash. at 614.

Our Supreme Court refined the *Toadvine* decision, without mentioning it, one year

16

later in *Alto v. Hartwood Lumber*, 135 Wash. 368. On appeal of a new trial order, Hartwood also alleged the court lacked jurisdiction over it. The court held that if the record discloses a matter which must necessarily prove fatal to a recovery as a final result, the court should recognize and enforce it at the time it first appears. The court agreed that Washington lacked jurisdiction over Hartwood, reversed the grant of a new trial, and remanded for dismissal of the case. Animating the court's decision was a desire to avoid "a needless waste of time and energy of both the court and the litigants" by remanding for a new trial. *Alto*, 135 Wash. at 369.

Two decades later our Supreme Court reaffirmed the messages in the *Alto* and *Toadvine* decisions in *Kimball v. Moore*, 18 Wn.2d 643. After the jury returned a verdict in an unlawful detainer suit, Moore moved, and the trial court granted, a new trial. Kimball appealed the new trial order and also assigned error to the trial court's admission of certain testimony. Our high court declined to consider the evidentiary question because the only questions properly reviewable upon an appeal are those questions which are involved in the judgment or order from which the appeal is taken. The court noted an exception for alleged errors necessarily *"fatal to any right of recovery." Kimball*, 18 Wn.2d at 653. The evidentiary issue *Kimball* raised fell short of this exception

In *Cox v. General Motors Corp.*, 64 Wn. App. 823, this court reviewed and relied on prior cases when refusing to address certain pretrial motions General Motors (GM) included in its notice of appeal: GM's motion for partial summary judgment arguing that

17

it had no liability as a matter of law; Cox's summary judgment motion asking the court to rule that the jury could not apportion fault among the defendants; and GM's motion for reconsideration. *Cox*, 64 Wn. App. at 824-25. This court employed a different phrase than "fatal to any right of recovery" when ascertaining the exception to the rule denying review. This court adopted the phrase "issues . . . conclusive of the action as a whole." 64 Wn. App. at 829. This court refused to entertain any assignments of error other than the order granting a new trial because none of the other assignments were conclusive to the action as a whole. The court did not analyze the different pretrial motions upon which GM sought to review. One might wonder if a partial motion for summary judgment arguing no liability might be conclusive if granted.

In *Dalton v. State*, 115 Wn. App. at 706 n.2, this division of the Court of Appeals reversed an order denying a new trial, while stating we would not address other issues on appeal on the basis of *Cox v. General Motors Corp.*, 64 Wn. App. 823. The decision does not identify the other claimed errors.

Before trial, ACIC moved for partial summary judgment, asking the trial court to conclude that, as a matter of law, it fully complied with the WACs, IFCA, and CPA and did not act in bad faith. At the conclusion of the Espinozas' case, ACIC moved for judgment as a matter of law on the same extracontractual claims. ACIC argued the Espinozas failed to prove it unreasonably denied the Espinozas' claim, failed to establish noneconomic damages, and failed to prove they incurred rental expenses stemming from

18

the denial of coverage. The trial court granted the motion to the extent of dismissing a claim for rental expenses. Neither of the two motions would dispose of the entire case. Even if each motion was granted, the jury must still decide Gabriel and Irma Espinozas' claim that ACIC breached its insurance policy and whether Gabriel Espinoza intentionally misrepresented a fact. Therefore, none of these assigned errors, if accepted, are "fatal to any right of recovery." None of the motions, if granted, would be conclusive to the action as a whole.

ACIC worries it will waive the ability, upon remand, to repeat their motions for judgment as a matter of law and for summary judgment if this court does not address them now. Understandably, a cautious party does not wish to waive arguments, but we disagree that there is a waiver. RAP 2.5(c)(1) allays ACIC's concern. The rule reads:

> If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

The advisory committee on Rules of Appellate Procedure explained the purpose of the rule:

> The trial court may exercise independent judgment as to decisions to which error was not assigned in the prior review, and these decisions are subject to later review by the appellate court. Prior law to the contrary is superseded.

2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 § 54 subsection (c)(1) at 283 (7th ed. 2011).

19

ACIC also fears it cannot move for summary judgment or judgment as a matter of law upon remand, but it cites no authority supporting this fear. Under RCW 4.76.010, a new trial entitles the party to a reexamination of issues of fact and law. This court has concluded that a trial court may review pretrial orders at any time before entry of final judgment. *Moratti v. Farmers Ins. Co. of Wash.*, 162 Wn. App. 495, 501-02, 254 P.3d 939 (2011).

Finally, ACIC encourages us to reach these additional assignments of error because, when we dismiss the Espinozas' contract claim because of misrepresentation, the motions for summary judgment and judgment as a matter of law dispose of all of the remaining claims. We do not, however, dismiss the contract claim.

## New Trial

We move to ACIC's contention that the trial court erred when it granted the Espinozas' motion for a new trial. ACIC argues the court should have entered judgment for it because the jury's misrepresentation finding operated to preclude the Espinozas from recovering. We disagree.

The parties dispute the standard of review we should apply to the order granting a new trial. ACIC argues we should employ a de novo standard because the trial court applied a wrong legal standard. The Espinozas ask us to defer to the trial court and utilize an abuse of discretion standard because the jury's answers in the verdict created a

factual inconsistency. We ignore this dispute, since we would uphold the trial court's ruling under either standard.

The trial court granted Gabriel and Irma Espinoza a new trial pursuant to RCW 4.44.440, CR 59(a)(1), and CR 59(a)(9). We question whether RCW 4.44.440 is an appropriate ground under the circumstances of this trial. The statute permits a trial court to order a new trial "[w]hen special findings of fact are inconsistent with the general verdict." The jury did not deliver a general verdict. Under CR 59, however, the court properly awarded the Espinozas a new trial.

CR 59(a) lists nine grounds upon which a trial court may grant a new trial. CR 59(a) permits courts to grant a new trial where, as relevant here:

> On the motion of the party aggrieved, a verdict may be vacated and a new trial granted to all or any of the parties, and on all issues, or on some of the issues when such issues are clearly and fairly separable and distinct, or any other decision or order may be vacated and reconsideration granted. Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
> (1) Irregularity in the proceedings of . . . the jury . . . prevented [a party] from having a fair trial; [or]
>  . . . .
> (9) That substantial justice has not been done.

Under CR 59(d), a trial court may order a new trial on its own initiative for any reason that it might have granted a new trial on the motion of a party. *Estate of Stalkup v. Vancouver Clinic, Inc., PS*, 145 Wn. App. 572, 583, 187 P.3d 291 (2008).

CR 59(a) essentially asks whether a party received a "fair trial." *State v. Taylor*, 60 Wn.2d 32, 42, 371 P.2d 617 (1962). ACIC focuses on the word "trial" and imposes a hypertechnical meaning to the term. It argues any irregularity in the proceedings did not prevent the Espinozas from having a fair trial since any irregularity occurred after the jury found a misrepresentation. Under ACIC's view, the trial ended when the jury found misrepresentation, since it should have merely signed the verdict thereafter.

ACIC fails to support its argument with citation to authority or explain why such a finding necessarily means the Espinozas received a fair trial. We reject ACIC's limited view of a "trial." At the least, the trial includes all proceedings through the announcement of the verdict and the discharge of the jury.

None of the grounds listed in CR 59(a) explicitly mentions an inconsistent verdict. Nevertheless, a court must grant a new trial when verdict interrogatories render the jury's resolution of the ultimate issue impossible to determine. *Blue Chelan, Inc. v. Dep't of Labor & Indus.*, 101 Wn.2d 512, 515, 681 P.2d 233 (1984); *Alvarez v. Keyes*, 76 Wn. App. 741, 743, 887 P.2d 496 (1995).

Once a jury renders a verdict, the trial court must declare its legal effect. *Dep't of Highways v. Evans Engine & Equip. Co.*, 22 Wn. App. 202, 205-06, 589 P.2d 290 (1978) (quoting 2 LEWIS H. ORLAND, WASH. PRACTICE § 293 (3d ed. 1972)); *Minger v. Reinhard Distrib. Co.*, 87 Wn. App. 941, 946, 943 P.2d 400 (1997); *see* CR 49; CR 58. A court liberally construes a verdict so as to discern and implement the jury's intent, if

22

consistent with the law. *Wright v. Safeway Stores, Inc.*, 7 Wn.2d 341, 344, 109 P.2d 542 (1941); *Cameron v. Stack-Gibbs Lumber Co.*, 68 Wash. 539, 544, 123 P. 1001 (1912). "If special verdict answers conflict with each other, a court must attempt to harmonize them; where the answers are reconcilable, the trial court must enter judgment accordingly and where the answers are irreconcilable, the trial court must order further deliberations or a new trial." *Estate of Dormaier v. Columbia Basin Anesthesia, PLLC*, 177 Wn. App. 828, 866, 313 P.3d 431 (2013). A verdict is irreconcilable when "the verdict contains contradictory answers to interrogatories making the jury's resolution of the ultimate issue impossible to determine." *Estate of Stalkup*, 145 Wn. App. at 586. In making this determination, this court reads the verdict as a whole, including instructions and may not substitute its judgment for the jury's. *Guijosa v. Wal-Mart Stores, Inc.*, 101 Wn. App. 777, 797, 6 P.3d 583 (2000), *aff'd* 144 Wn.2d 907, 32 P.3d 250 (2001); *Estate of Stalkup*, 145 Wn. App. at 586.

ACIC cites a number of Washington cases out of context to support its argument that the trial court erred when granting a new trial. We address those cases.

ACIC argues that, based upon *Estate of Stalkup*, a verdict is consistent if there is evidence in the record to support the jury's respective findings. *Estate of Stalkup*, however, presented a fundamentally different question. The jury reached different conclusions on separate elements of the plaintiff's claim. The jury found the defendant negligent but concluded that negligence was not a proximate cause of plaintiff's injuries.

23

On appeal, the *Stalkup* court concluded the verdicts were consistent given the evidence supporting both findings. Logic tells us that a defendant can be negligent without that negligence causing harm to the plaintiff.

*Stalkup* would be relevant if our jury only found the Espinozas suffered a covered loss, but that Gabriel Espinoza made a material, intentional misrepresentation. The two findings were supported by the evidence and were harmonious. But unlike *Estate of Stalkup*, our jury found more than just a covered loss and a misrepresentation.

ACIC argues that, once the jury answered question three, in section one, concerning misrepresentation during the EOU, all other questions became irrelevant, such that any inconsistent verdict answers are also immaterial. But the jury also decided the amount of damages before finding misrepresentation, such that the Espinozas could argue that the award of damages ended the deliberation process. We also do not know if the jury answered the questions in the order given in the verdict form. Suffice it to say, the law gives no priority to the first question answered when the jury renders an inconsistent verdict. If the law granted such priority, there would be no inconsistent verdict rule since all inconsistencies would be resolved by the first answer in the verdict.

On the basis of *Guijosa v. Wal-Mart Stores*, 101 Wn. App. 777, ACIC next contends a negative response to a special interrogatory prevails over an inconsistent implication arising from the verdict. Although it does not expressly so state, ACIC must consider the verdict portions favoring the Espinozas as only "implications." But ACIC

omits a critical portion of *Guijosa.* The Court of Appeals held: "The responses to special interrogatories prevail over the inconsistent implications *of a general verdict.*" *Guijosa,* 101 Wn. App. at 800 (emphasis added). Our jury did not return a general verdict. Our jury's inconsistent rulings involved interrogatory answers.

ACIC argues we should reconcile the legal effects of the verdict, as this division did in *Estate of Dormaier,* 177 Wn. App. 828. Dormaier's estate brought a loss of chance and wrongful death claim against, among others, her nurse anesthetist Robert Misasi. Loss of chance permits a plaintiff to recover for a 50 percent or less reduction in a person's chance of survival. Accordingly, the trial court instructed the jury, "If you find that the loss or diminution of a chance to survive was in excess of 50%, then you have found that such negligence was a proximate cause of the death." *Dormaier,* 177 Wn. App. at 841. The jury found Misasi proximately caused Dormaier a 70 percent chance of loss of survival but that Misasi did not proximately cause her death.

While acknowledging the conflict, the *Dormaier* court reconciled the jury's two findings' legal effect. This division reasoned that the instructions did not expressly limit the scope of potential findings because it used descriptive rather than prescriptive language. In other words, "[i]t merely announced that finding a lost chance of survival greater than 50 percent would have the same legal effect as finding proximate cause of death." *Dormaier,* 177 Wn. App. at 867. Based on the instruction, the trial court inferred the jury's intent and concluded the jury's finding—that Misasi caused Dormaier a 70

25

percent chance of loss of survival—equated to a finding that Misasi proximately caused Dormaier's death.

ACIC asks this court to harmonize the legal effect of the jury's misrepresentation finding with its allocation of responsibility between ACIC and AAA/Taylor. Under a string of cases, ACIC argues the legal effect of the jury's misrepresentation finding required the trial court to enter judgment in its favor. *Buckner Inc. v. Berkey Irrig. Supply*, 89 Wn. App. 906, 951 P.2d 338 (1998); *Mut. of Enumclaw Co. v. Cox*, 110 Wn.2d 643, 757 P.2d 499 (1988); *Johnson v. Allstate Ins. Co.*, 126 Wn. App. 510, 108 P.3d 1273 (2005). But unlike *Dormaier*, the verdict form did not use descriptive rather than prescriptive language, and the cases ACIC cite provide no guidance on resolving the jury's findings.

Under *Buckner*, a court may not implement a jury's intent that is inconsistent with applicable law. 89 Wn. App. 906. ACIC argues the new trial order is inconsistent with *Mut. of Enumclaw v. Cox*, 110 Wn.2d 643, and *Johnson v. Allstate Ins.*, 126 Wn. App. 510.

Neither *Mutual of Enumclaw* nor *Johnson* is dispositive. None of the parties in *Mutual of Enumclaw* or *Johnson* alleged conflicting verdicts. Rather, *Johnson* stands for the proposition that a material misrepresentation can void an otherwise valid covered loss. 126 Wn. App. at 517-18. The Espinozas do not dispute this proposition. But the jury found more than a covered loss; it allocated responsibility between the defendants

26

and awarded damages. The jury found a similar representation by Gabriel Espinoza given during the application process not to be an intentional misrepresentation.

In *Mutual of Enumclaw*, our state high court upheld a trial court's judgment notwithstanding the verdict despite Mutual of Enumclaw's failure to properly preserve an objection to an improper jury instruction. *Mut. of Enumclaw*, 110 Wn.2d at 651-52. The parties did not contend the verdict was inconsistent.

Our jury allocated responsibility to ACIC when the question directed the jury to apportion fault if it concluded all defendants were responsible for the damage to the Espinozas. Such action by the jury reflected an intent to render a verdict in favor of the Espinozas despite it finding a misrepresentation that entitled ACIC to a defense verdict. Logic enlightens us that these two findings conflict.

Other actions by our jury are ostensibly inconsistent with a verdict in favor of ACIC and inconsistent with a finding of misrepresentation during Gabriel Espinoza's EOU. For instance, the jury took the time to assess damages thereby illustrating a desire to award money to the Espinozas.

The jury found that Gabriel Espinoza did not engage in an intentional misrepresentation during the application process. Yet, the gist of ACIC's claim of misrepresentation during the EOU is Gabriel testifying at the EOU that he told Pamela Taylor, during the application interview, that the couple heated the home with baseboard heating. This is the same basis for ACIC arguing that Gabriel Espinoza engaged in a

27

misrepresentation during the application process. ACIC distinguishes the two purported misrepresentations by characterizing the EOU misrepresentation as lying under oath that he had disclosed information he had not disclosed. By contrast, the purported misrepresentation during the application process was the direct statement, not under oath, misrepresenting the nature of heating at the home. According to ACIC, the jury was more worried about the repeat of the fraud after the loss. ACIC's argument is the classic distinction without a difference. ACIC also beseeches that the two findings can be consistent because of a different standard of proof between the two claims of misrepresentation. The insurance company must prove an intentional misrepresentation in the application process by clear, cogent and convincing evidence, but need prove intentional misrepresentation during its investigation by the preponderance of the evidence. We do not consider this distinction sufficient to render the two findings consistent, particularly since the misrepresentation was of the same facts.

### Attorney Fees

Gabriel and Irma Espinoza seek attorney fees and costs under RAP 18.1. RAP 18.1(a) permits an award of attorney fees and costs on appeal if granted by applicable law. The Espinozas contend they are entitled to reasonable attorney fees on their breach of contract theory and in connection with their statutory CPA claim. Nevertheless, the Espinozas have not yet prevailed on their breach of contract or consumer protection claims. If they later win, they may seek attorney fees and costs.

28

Gabriel and Irma Espinoza also seek an award of fees and costs under RAP 18.9(a). This rule permits this court to order a party to pay terms or compensatory damages for a frivolous appeal. "An appeal is considered frivolous when it presents no debatable issues and is so devoid of merit that there is no possibility of reversal." *Griffin v. Draper*, 32 Wn. App. 611, 616, 649 P.2d 123 (1982). When evaluating whether an appeal is frivolous, this court considers the following factors:

> "(1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."

*Griffin*, 32 Wn. App. at 616 (quoting *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980).

ACIC had the right to appeal the trial court's new trial order under RAP 2.2(a)(9). The issue of whether this court could legally reconcile the jury's verdict was debatable. ACIC presented thoughtful, although wrong, arguments. Considering the record as a whole, in which the trial court also wrestled at length over this issue, and resolving any dispute in favor of ACIC, the appeal is not frivolous. We decline to award attorney fees and costs under RAP 18.1 or 18.9.

No. 31569-0-III
*Espinoza v. Am. Commerce Ins. Co.*

## CONCLUSION

We affirm the trial court and remand for a new trial. We deny Gabriel and Irma

Espinozas' request for attorney fees against ACIC.

Fearing, J.

WE CONCUR:

Brown, A.C.J.

Korsmo, J.

30