IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Petition for Vulnerable Adult Order of Protection of: | ) ) ) | No. 35678-7-III (consolidated with No. 35679-5-III) |
| HELEN KRINKE, | ) ) | |
| A Vulnerable Adult, | ) ) | |
| KAREN PICOLET, | ) ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| In re Petition for Vulnerable Adult Order of Protection of: | ) ) ) | |
| HELEN KRINKE, | ) ) | |
| A Vulnerable Adult, | ) ) | |
| PAUL PICOLET, | ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Karen Picolet and Paul Picolet, wife and husband, appeal after the trial court issued a protection order in favor of Helen Krinke. In its order, the trial court explicitly reserved the issue of damages for a later hearing. We conclude that this appeal is premature, award attorney fee sanctions against the Picolets for a frivolous appeal, and remand.

FACTS

Helen Krinke has lived in her home at 44 Alder Road in Twisp, Washington, since 1948. In 1969, after her husband passed away, Ms. Krinke sold the property to Thomas Devins and Marjorie Adele Devins. The property is comprised of three different tax parcels—a 12.43 acre parcel, a 14 acre parcel, and a residential 3.45 acre parcel. When she sold the property, Ms. Krinke reserved a life estate on the residential parcel. The life estate agreement was not notarized. Ms. Krinke recorded the life estate agreement with the Okanogan County auditor's office almost one decade later, on May 16, 1978.

The Devinses subsequently divorced. Ms. Devins retained the property, she remarried, and her last name is now O'Neal. In 2017, Mrs. O'Neal and her husband Cecile listed the property for sale. The listing recited that 30 acres were for sale, which included three different parcels, and noted that the "house parcel (3322200068) is subject to A Life Estate of Helen Krinke." Clerk's Papers (CP) at 64.

In April 2017, Paul Picolet approached his real estate agent, Susannah Gardner, about purchasing the property. Ms. Gardner informed Mr. Picolet of the life estate. During negotiations with the O'Neals, Mr. Picolet asked Ms. Gardner if it was possible to remove the life estate so he could secure financing for the property and then put it back on. She declined. On May 1, 2017, Mr. Picolet contacted the O'Neals' real estate agent

2

and asked if there was some way to eliminate the life estate. She explained that the life estate could not be removed without the approval of Ms. Krinke, and that he might want to contact an attorney.

The Picolets and the O'Neals decided to complete the purchase without further involvement of the real estate agents. After closing, they hired an attorney to prepare a life estate agreement for Ms. Krinke, apparently without informing the attorney that an agreement already existed. The proposed agreement would give Ms. Krinke a life estate in the house and one foot around it. The agreement, which did not reference the existing life estate agreement, was signed by the Picolets and the O'Neals. It was never signed by Ms. Krinke.

The Picolets began moving items onto Ms. Krinke's life estate parcel. The items included a horse trailer, a single-wide manufactured home, shipping containers, and motion-activated cameras. In addition, they bulldozed plants and vegetation, and began drilling a well.

Ms. Krinke felt that the Picolets were taking over her property and it caused her great anxiety. The Picolets placed their property right outside Ms. Krinke's window and it blocked her view of the trees. Ms. Krinke was so nervous over the situation that she called her nieces, Nita Mahaffey and Ellen Bump, to come stay with her. Ms. Mahaffey

recognized that Ms. Krinke became really stressed, was sad that she could not see her trees, and obsessed over the situation. Ms. Bump recalled that Ms. Krinke cried more in one week than she had seen in 50 years. She was really stressed, angry, and she worried constantly about leaving her home. Ms. Krinke stated she could not get out of bed sometimes. Ms. Krinke's neighbor, Kent Woodruff, noticed she became constantly agitated. Mr. Woodruff testified that Ms. Krinke felt threatened, violated, would cry often, would refuse to leave the house, and felt afraid. At one point, Mr. Picolet told Ms. Krinke that if she did not stop complaining, he would have her committed.

One day before filing the petition, Ms. Krinke's counsel met Ms. Picolet on the property. During the conversation, Ms. Picolet denied any knowledge of Ms. Krinke's life estate. However, also during the same conversation, Ms. Picolet corrected counsel on the date the life estate was actually recorded with the Okanogan County auditor's office and also corrected counsel on the acreage it covered.

Ms. Krinke filed a "Petition for Vulnerable Adult Order for Protection" on August 24, 2017. In her petition, she asked the court to restrain the Picolets from committing any harm against her, exclude them from her life estate property, restrain the Picolets from having any contact with her, require the Picolets to pay costs and attorney

fees, require the Picolets to remove their property, and also pay damages for her

emotional stress.

Before trial, the O'Neals filed sworn affidavits on the Picolets' behalf. Both Mr.

O'Neal and Mrs. O'Neal denounced Ms. Krinke's life estate agreement as fraudulent.

Mr. O'Neal assisted in the preparation of Mrs. O'Neal's affidavit because she had a

stroke five years earlier and only communicated via eye blinks and hand squeezes. Mr.

O'Neal confirmed the accuracy of his wife's affidavit by reading her a paragraph at a time

and then waiting for an eye blink or a hand squeeze.

After trial, the court found that (1) Ms. Krinke was a vulnerable adult within the

meaning of chapter 74.34 RCW, (2) Ms. Krinke holds a valid life estate with respect to

the residential parcel, (3) the Picolets were aware of Ms. Krinke's life estate prior to the

purchase of the property, (4) that substantial changes occurred in Ms. Krinke's life by the

Picolets placing large shipping containers and motion-activated cameras on the residential

property, and bulldozing areas of the life estate property, and (5) the Picolets' nonverbal

actions violated Ms. Krinke's life estate rights and caused her significant worry and fear.

The trial court entered a vulnerable adult protection order. The order required the

Picolets to remove their possessions from the life estate property and delete the pictures

taken by their motion cameras. The order explicitly stated: "[Ms. Krinke's] request for

damages and costs will be determined at a separately noticed special hearing." CP

(Karen Picolet) at 11.

The Picolets appealed prior to the special hearing.

ANALYSIS

A.   DIRECT REVIEW IS NOT PROPER

In her response brief, Ms. Krinke argues the appeal is premature because it is not

from a final order or judgment.  In their reply brief, the Picolets argue that direct review is

proper because their appeal is from a final order.  We agree with Ms. Krinke.

RAP 2.2 lists the decisions of the superior court that are subject to direct review.

Under RAP 2.2(a)(1), a party may appeal a "final judgment entered in any action or

proceeding, regardless of whether the judgment reserves for future determination an

award of attorney fees or costs."  "A 'final judgment' 'is one that settles all the issues in a

case.'"  *State v. Hecht*, 2 Wn. App. 2d 359, 363, 409 P.3d 1146 (quoting *In re Det. of

Turay*, 139 Wn.2d 379, 392, 986 P.2d 790 (1999)), *review denied*, 190 Wn.2d 1024, 418

P.3d 800 (2018).

Ms. Krinke has a pending claim for emotional damages.  The trial court

acknowledged as much in its order.  The Picolets contend that a claim for emotional

damages is not available under chapter 74.34 RCW, the "Abuse of Vulnerable Adults"

act. Whether this is true or not, the Picolets have not raised this argument below and the trial court has not ruled on it. Not all issues in the case have been settled. The appeal, therefore, is not from a final order and is not subject to direct review.

B.     DISCRETIONARY REVIEW IS NOT PROPER

The Picolets alternatively argue that this court should grant discretionary review. We decline to do so.

RAP 2.3(a) permits a party to seek discretionary review of any act by a superior court that is not subject to direct review. RAP 2.3(b) sets forth considerations for this court in deciding whether to grant discretionary review.

The Picolets argue there "is an automatic right to appeal injunctions and protective orders under RAP 2.3(b)(2) where there is probable error." Reply Br. of Appellants at 17. We disagree.

RAP 2.3(b)(2) sets forth a consideration for *discretionary* review, not for automatic review. That consideration requires the appellant to show that "[t]he superior court has committed probable error *and* the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act." RAP 2.3(b)(2) (emphasis added).

We infer that the Picolets are arguing that the order substantially limits their freedom to act because it preserves Ms. Krinke's life estate. Even if this is a sufficient limitation on their ability to act, we disagree that the trial court committed probable error.

### 1. The trial court did not commit probable error by concluding that the life estate agreement is enforceable

The Picolets argue in their opening brief that the trial court erred when it enforced the life estate agreement because it was never notarized and the allegations of fraud rebutted the presumption of validity. We disagree.

"A trial court's findings of fact are reviewed for substantial evidence." *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 352, 172 P.3d 688 (2007). "'Substantial evidence' means evidence that is sufficient 'to persuade a rational, fair-minded person of the truth of the finding.'" *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016) (internal quotation marks omitted) (quoting *Hegwine*, 162 Wn.2d at 353).

A life estate is "a present interest that terminates on the death of an individual whose life serves as the governing life." *See* RESTATEMENT (THIRD) OF PROPERTY: (WILLS & DONATIVE TRANSFERS) § 24.5 (Am. Law. Inst. 2011). Generally, conveyance of a life estate through a deed must "be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take

8

acknowledgements of deeds." RCW 64.04.020. Acknowledgements of deeds are most commonly known to be taken by a notary public. RCW 64.08.010. However, an unacknowledged deed is "valid as between the parties, and valid as to all persons claiming under the grantor, except, perhaps, a purchaser of the property for a valuable consideration who took without actual notice of the outstanding deed." *In re Estate of Deaver*, 151 Wash. 454, 456, 276 P. 296 (1929).

Here, it is undisputed that the deed conveying a life estate to Ms. Krinke was recorded in the Okanogan County auditor's office on May 16, 1978. The Picolets also concede that even though the deed was not acknowledged correctly, it still gave them notice of its contents.[1]

The Picolets merely assert the deed was fraudulent and the trial court erred in finding otherwise. However, there is substantial evidence to persuade a rational, fair-minded person, that the deed was not fraudulent. Ms. Krinke actually lived in the house

---

[1] RCW 65.08.030 ("An instrument in writing purporting to convey or encumber real estate or any interest therein, which has been recorded in the auditor's office of the county in which the real estate is situated, although the instrument may not have been executed and acknowledged in accordance with the law in force at the time of its execution, shall impart the same notice to third persons, from the date of recording, as if the instrument had been executed, acknowledged, and recorded, in accordance with the laws regulating the execution, acknowledgment, and recording of the instrument then in force.").

for decades after the 1969 sale. Further, the original life estate agreement matched the agreement that was recorded in the auditor's office in 1978.

Contrast this strong evidence against the Picolets' weak evidence. The only evidence the Picolets presented at trial was affidavits from the O'Neals. Mr. O'Neal, who was not present during the 1969 sale, merely stated that his wife would have never signed the life estate agreement. Mrs. O'Neal's affidavit is also unpersuasive. Her affidavit is based on Mr. O'Neal's interpretation of her eye blinks and hand squeezes.

We conclude that the trial court did not commit probable error when it determined that Ms. Krinke's life estate agreement is enforceable. In fact, the correctness of the trial court's determination is overwhelming.

> 2.      The trial court did not commit probable error when it found that the Picolets intentionally abused Ms. Krinke

The Picolets argue in their opening brief that the trial court erred when it found they intentionally abused Ms. Krinke. We disagree.

A trial court's decision to grant or deny a protection order is reviewed for an abuse of discretion. *In re Vulnerable Adult Petition for Knight*, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel.*

*Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).  A trial court's findings are reviewed for substantial evidence.  *Knight*, 178 Wn. App. at 936-37.  "'Substantial evidence' means evidence that is sufficient 'to persuade a rational, fair-minded person of the truth of the finding.'"  *Blackburn*, 186 Wn.2d at 256 (internal quotation marks omitted) (quoting *Hegwine*, 162 Wn.2d at 353).

The "Abuse of Vulnerable Adults" act, chapter 74.34 RCW, was enacted to protect vulnerable adults who may be subjected to abuse, neglect, financial exploitation, or abandonment.  RCW 74.34.005(1).  "Abuse" means the willful action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult, and includes mental abuse.  RCW 74.34.020(2).  "'Mental abuse' means a willful verbal or nonverbal action that threatens, humiliates, harasses, coerces, intimidates, isolates, unreasonably confines, or punishes a vulnerable adult."  RCW 74.34.020(2)(c).  "Willful" is when "'a person acts knowingly with respect to the material elements of the offense.'"  *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 551, 389 P.3d 731 (quoting *State v. Bauer*, 92 Wn.2d 162, 168, 595 P.2d 544 (1979)), *review denied*, 188 Wn.2d 1009, 394 P.3d 1016 (2017).

Here, there is substantial evidence that could have persuaded a "rational, fair-minded person" that the Picolets intentionally abused Ms. Krinke.  The Picolets'

11

nonverbal actions were not accidental, but intentional.  The Picolets placed their shipping container, mobile home, large trucks, and other items onto Ms. Krinke's life estate property.  The entire property purchased by the Picolets consists of 30 acres, and Ms. Krinke's life estate covers the middle parcel that is only 3.45 acres.  Yet, the Picolets moved their belongings onto Ms. Krinke's small parcel.  This placement blocked Ms. Krinke's view of her trees.  The Picolets began bulldozing lots of vegetation and trees on the life estate property and also began drilling a well.  There were cameras mounted and pointed at Ms. Krinke's home.  The evidence is undisputed that Ms. Krinke felt threatened, humiliated, and intimidated by the Picolets' actions.  She had her nieces stay with her for safety and comfort, and she cried extensively.

We conclude that the trial court did not commit probable error by finding that the Picolets "abused" Ms. Krinke within the meaning of RCW 74.34.020(2).  In fact, the evidence is overwhelming that the trial court's finding was correct.

C.      ATTORNEY FEE SANCTIONS

Ms. Krinke requests attorney fees sanctions under RAP 18.9.

RAP 18.9 authorizes an award of attorney fee sanctions if an appeal is frivolous. When determining whether an appeal is frivolous, the court will consider the following factors:

"(1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal."

*Espinoza v. Am. Commerce Ins. Co.*, 184 Wn. App. 176, 202, 336 P.3d 115 (2014) (internal quotation marks omitted) (quoting *Griffin v. Draper*, 32 Wn. App. 611, 616, 649 P.2d 123 (1982)).

After considering these factors, we determine that the Picolets' appeal is frivolous. The facts and law are so overwhelmingly against them that there was no reasonable possibility of reversal. Subject to Ms. Krinke's compliance with RAP 18.1(d), we grant Ms. Krinke's request for attorney fee sanctions against the Picolets.

Remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.　　　　　Fearing, J.

13